# MATTILA,
*Petitioner,*

*v.*

# MASON,
*Respondent.*

## (TC 23823, CA 10582, SC 26127)

598 P2d 675

Emil R. Berg, Cooperating Attorney, American Civil Liberties Union, Oregon City, argued the cause and filed the briefs for appellant.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

TONGUE, J.

**TONGUE, J.**

Petitioner brought this mandamus proceeding in circuit court seeking an order requiring defendant, a district judge, to schedule a hearing as requested by petitioner on an alleged traffic infraction without requiring petitioner to first post bail in the sum of $27. On appeal from an order by the circuit court denying such relief, the Court of Appeals, citing its previous decision in *Hoffman v. French,* 36 Or App 739, 585 P2d 730 (1978), held that it was "unable to reach the merits" of the case for the reason that Oregon Laws 1975, ch 611, which made district courts courts of record and divested circuit courts of appellate review of district courts, had the effect of divesting circuit courts of authority not only to review district court actions by writ of review, but also to issue writs of mandamus to district courts. 38 Or App 433, 590 P2d 732 (1979).

We granted review to consider the following questions:

    1. Was the circuit court's mandamus power over the district courts terminated when the district courts were made courts of record?

    2. If it was not, does the district court have authority to demand bail for a future appearance for trial on a Class "C" traffic infraction?

    3. If the district court has such authority, is the person charged entitled to the setting of a future trial date without posting bail?

■ *The Circuit Courts' Mandamus Power.*

Article VII (original) § 9 of the Oregon Constitution provides:

    "All judicial power, authority and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts, and they shall have appellate jurisdiction, and supervisory control over the County Courts, and all other inferior Courts, Officers, and tribunals."

Article VII (amended) § 2 provides:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the *supreme court may, in its own discretion, take original jurisdiction in mandamus,* quo warranto and habeas corpus proceedings." (Emphasis added)

ORS 34.110 provides:

"*A writ of mandamus may be issued to any inferior court,* corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." (Emphasis added)

ORS 34.120 provides:

"*The circuit court* or judge thereof of the county wherein the defendant, if a public officer or body, exercises his or its functions, or if a private person or corporation, wherein such person resides or may be found, or such private corporation might be sued in an action, *shall have exclusive jurisdiction of mandamus proceedings,* except that the Oregon Tax Court or judge thereof shall have jurisdiction in mandamus proceedings in all cases involving tax laws as defined in ORS 305.410, and *except that the Supreme Court may take original jurisdiction in mandamus proceedings* as provided in section 2 of amended Article VII of the Oregon Constitution." (Emphasis added)

ORS 34.150, 34.170, 34.180 and 34.190 provide for pleadings in mandamus proceedings, including alternative or peremptory writs, demurrers, answers and replications. ORS 34.200 provides for return of the writ to circuit court for trial. ORS 32.240 provides for appeal "[f]rom the judgment of the circuit court."

[238]

*Hoffman v. French, supra,* had not been decided by the Court of Appeals at the time of the filing of this mandamus proceeding in the circuit court for Columbia County. The issue to be decided in that case was whether a circuit court had jurisdiction to review, by writ of review, a decision by a district court as an "inferior court" in view of the enactment in 1975 of chapter 611 which made the district court a court of record (ORS 46.330) and which provided that appeals from the district courts shall now be taken to the Court of Appeals, instead of to the circuit courts (ORS 46.250).[1] The basis for the holding by the Court of

---

[1] The Oregon statutes on writs of review include ORS §§ 34.020, 34.030 and 34.040.

ORS 34.020 provides:

"Any party to any process or proceeding before or by *any inferior court,* officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise. *Upon a review, the court may review any intermediate order* involving the merits and necessarily affecting the decision or determination sought to be reviewed." (Emphasis added)

ORS 34.030 provides:

"*The writ shall be allowed by the circuit court* or judge thereof, or, in counties where the county court has judicial functions, by the county court or judge of the county wherein the decision or determination sought to be reviewed was made, upon the petition of the plaintiff, describing the decision or determination with convenient certainty, and setting forth the errors alleged to have been committed therein. The petition shall be signed by the plaintiff or his attorney, and verified by the certificate of an attorney to the effect that he has examined the process or proceeding, and the decision or determination therein, and that it is erroneous as alleged in the petition. A writ shall not be allowed unless the petition therefor is made within 60 days from the date of the decision or determination sought to be reviewed." (Emphasis added)

ORS 34.040 provides:

"The writ shall be allowed in all cases where the *inferior court,* officer, or tribunal other than an agency as defined in subsection (1) of ORS 183.310 in the exercise of judicial or quasi-judicial functions appears to have:

"(1) Exceeded its or his jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it or him;

Appeals that circuit courts may no longer review district court proceedings by writ of review was as follows:

> "ORS 34.020 and ORS 34.040 provide that a writ of review may be allowed to review proceedings of an 'inferior court.' That term refers generally to courts that are subject to either appellate review or supervisory control by the circuit court. *See* Cole v. Marvin, 98 Or 175, 193 P 828 (1920); Kirkwood v. Washington County, 32 Or 568, 52 P 568 (1898). By virtue of Chapter 611 district courts are no longer subject to direct appellate review by circuit courts. Administrative supervision of district courts is lodged in the Supreme Court, ORS 1.002. * * *" 36 Or App at 741-42.

The decision of that issue by the Court of Appeals is now pending review by this court.

Regardless, however, of whether or not the Court of Appeals was correct in its holding in *Hoffman* that district courts are no longer "inferior courts" for purposes of writs of review by the circuit courts, it does not necessarily follow, in our opinion, that circuit courts, by reason of Oregon Laws 1975, ch 611, may no longer issue writs of *mandamus* to district courts as "inferior courts" pursuant to ORS 34.110.

A writ of review, as provided by Oregon statute, is substantially the same as the common law remedy of certiorari. Prior to the amendment of ORS 34.040 by Or L 1973, ch 561, it had been held that although, by statute, a writ of review was made concurrent with the right of appeal, the writ could not be used as a substitute for an appeal and was more limited in its scope and application. *See Bechtold et al v. Wilson et al,*

---

"(3)   Made a finding or order *not supported by reliable, probative and substantial evidence;* or

"(4)   Improperly construed the applicable law;

to the injury of some substantial right of the plaintiff, and not otherwise. The fact that the right of appeal exists is no bar to the issuance of the writ." (Emphasis added)

182 Or 360, 377-79, 186 P2d 525, 187 P2d 675 (1947), and *Lechleidner v. Carson,* 156 Or 636, 644-46, 68 P2d 482 (1937). Even then, however, a proceeding by writ of review involved some of the essential characteristics of an appeal. Thus, it was held that such a proceeding must be decided on the record brought from the inferior court and the writ could not be used to try issues of disputed fact, but could only be used to determine whether there is sufficient evidence to support findings by the inferior court. *Silva v. State,* 243 Or 187, 189, 412 P2d 375 (1966), and *City of Portland v. Garner et al,* 226 Or 80, 92, 358 P2d 495 (1961). The amendment of ORS 34.040 by Or L 1973, ch 561, so as to add subsection (3), as well as subsections (2) and (4), make such a proceeding even more similar to an appellate proceeding.[2]

■  A mandamus proceeding in the circuit court, however, is in no essential sense an appellate proceeding to "review" a record brought from an inferior court.[3] On the contrary, such a mandamus proceeding is classified as "a legal remedy in the nature of an action at law," although it is a special proceeding with requirements differing from the pleading and practice presented for ordinary actions. *State ex rel Venn v. Reid,* 207 Or 617, 631, 298 P2d 990 (1956). As previously noted, the pleadings prescribed by ORS 34.150 to 34.190 include answers and replications as a means of framing issues of fact for trial in such proceedings.

ORS 34.120 expressly provides that circuit courts shall have "exclusive jurisdiction" of such proceedings, except for that of the Tax Court in proceedings involving tax laws and except that the Supreme Court *"may"* take original jurisdiction "in its own discretion," as provided by Article VII (amended) § 2 of the

[2] *See note 1, supra.*

[3] In this respect mandamus proceedings in circuit courts must be distinguished from mandamus proceedings in this court, which have been considered to be "in the nature of an interlocutory appeal." *See State ex rel Maizels v. Juba,* 254 Or 323, 460 P2d 850 (1969).

Oregon Constitution. This court, however, not only is not required to entertain an original proceeding in mandamus, but does not have facilities for the trial of contested issues of fact (except through the appointment of a special master). As a result, and as a practical matter, except in tax cases the circuit court is the only court which is required to entertain mandamus proceedings and which has normal facilities for the determination of disputed issues of fact.

■ In addition, in concluding that the district courts are no longer "inferior courts" for purposes of writs of mandamus the Court of Appeals in this case failed to recognize that there are *two* tests for "inferiority." Thus, as held in *Bailey v. Winn,* 113 Mo 155, 20 SW 21, 22 (1892):

> "* * * The test of inferiority may be solved by showing that the court is *either* placed under the supervisory or appellate control of other courts, *or* that the jurisdiction as to the subsequent [*sic*] matter is limited and confined. * * *" (Emphasis added)

*See also Walkinshaw v. O'Brien,* 130 Conn 122, 32 A2d 547, 551-52 (1943), which discusses the various tests and definitions which have been stated and applies the "limited jurisdiction" test. Both *Bailey* and *Walkinshaw* upheld the power of the legislature to create certain courts under constitutional provisions authorizing the creation of "inferior" courts by the legislature. *See also People ex rel Sokoll v. Municipal Court,* 359 Ill 102, 194 NE 242, 244-45 (1934), which uses a "limited jurisdiction" test in determining whether a particular court is "inferior" for the purposes of determining whether a writ of prohibition will lie.

Indeed, this court, in the two cases relied upon by the Court of Appeals in *Hoffman — Kirkwood v. Washington County,* 32 Or 568, 571, 52 P 568 (1898), and *Cole v. Marvin,* 98 Or 175, 180-81, 193 P 828 (1920) — recognized that, at least in a "technical sense," the words "inferior courts" mean "courts of a

special and limited jurisdiction," although holding that, for the purposes of writs of review, "any court from which an appeal or writ of review will lie is inferior to the court to which its judgments may be carried for review * * *."

■ In our judgment, regardless of whether that test may be proper for application in determining whether a district court is an "inferior court" to a circuit court for the purposes of writs of review (the issue presented in *Hoffman*), it is not a proper test for application in determining whether a district court is an "inferior court" to the circuit court for the purposes of the exercise of its jurisdiction over mandamus proceedings pursuant to ORS 34.110. On the contrary, we believe that the test of "limited jurisdiction" is the proper test for application in such cases.

Although we find no cases in which the court has directly decided this question in a mandamus case involving similar facts, we believe that this result is consistent with previous decisions of this court. Thus, this court, for purposes other than writ of review proceedings, has appeared to adopt as the proper test to be applied in determining whether a court is an "inferior court," not the "appellate" test as stated in the older cases of *Kirkwood* and *Cole,* but the test of "limited jurisdiction."[4]

■ Upon application of the "limited jurisdiction" test to this case involving a writ of mandamus, it is clear that Oregon district courts, with their limited jurisdiction, are "inferior" to Oregon circuit courts, which are

---

[4] Thus, in *Salitan et al v. Dashney et al,* 219 Or 553, 556, 347 P2d 974 (1959), this court said that:

> "The district court is an inferior court and has only the jurisdiction expressly conferred on it by statute. (Citing cases) The jurisdiction of the district court is limited by ORS 46.060 to cases in which the amount claimed does not exceed $1,000. * * *"

As also stated in *City of Woodburn v. Domogalla,* 238 Or 401, 407, 395 P2d 150 (1964):

> "* * * Generally, when a court is given jurisdiction in a limited subject area * * * the court is classified as a court of inferior status."

courts of general and unlimited jurisdiction (with some exceptions).

We believe this conclusion to be further supported by the fact that by the enactment of Oregon Laws 1975, ch 611, the Oregon legislature, while specifically providing for direct appeals from district courts to the Court of Appeals rather than to the circuit courts, and while expressly conferring appellate jurisdiction upon the Court of Appeals, did not grant jurisdiction to the Court of Appeals to issue writs of mandamus. Nor did the Oregon legislature, by chapter 611, undertake to amend the then existing statutes relating to mandamus proceedings. Under the law as it existed prior to 1975, a district court was "inferior" to a circuit court under either the "appellate" or the "limited jurisdiction" test, and was therefore subject to writs of mandamus from the circuit courts.[5] In order for this court now to hold that circuit courts can no longer exercise that mandamus jurisdiction over district courts, we would be required to hold that the legislature intended by the adoption of chapter 611 to divest the circuit courts of mandamus jurisdiction and to create a situation in which only the Oregon Supreme Court would have mandamus jurisdiction over district courts, despite the fact that this court is not required to exercise its mandamus jurisdiction and is hardly a suitable court for mandamus proceedings involving disputed issues of fact.[6]

---

[5] *See, e.g., State ex rel Maizels v. Juba,* 254 Or 323, 460 P2d 850 (1969).

[6] *Cf. City of Woodburn v. Domogalla,* 238 Or 401, 409-10, 395 P2d 150 (1964).

It is also of interest to note that the 1979 legislature, in its enactment of SB 435 creating a Land Use Board of Appeals, amended ORS 34.040, relating to writs of review, to read as follows:

"The writ should be allowed in all cases where the inferior court *including a district court * * *."*

Such "subsequent" legislative history may be of little assistance in considering the previous intent of the 1975 legislature in its adoption of chapter 611, providing for direct appeals from the district courts to the

■ It follows, in our judgment, that the circuit court had jurisdiction in this mandamus proceeding.

■ *The Requirement of Bail.*

a. *The contentions by the parties.*

Petitioner's principal contentions may be summarized as follows: (1) That this defendant judge required a deposit of bail before he would schedule a hearing in this case and that a deposit of bail cannot be required in order to obtain a hearing on an alleged traffic infraction; (2) That even if not required as a precondition for a hearing, a requirement that bail be paid for a minor traffic infraction for which the maximum penalty is a fine of $100 would be a denial of due process of law, and (3) that, in any event, bail can properly be required only to assure the appearance of a defendant at trial and there was no showing in this case of any facts to support a conclusion that a deposit of bail was necessary to assure the presence of this defendant at a hearing on this alleged offense.

Defendant contends, in response: (1) That "[t]he sole question presented in this proceeding is whether defendant (judge) * * * may require petitioner to post bail to secure his appearance at a hearing on the traffic citation"; (2) That Oregon statutes authorize the requirement of bail for traffic offenses both (a) to secure a defendant's appearance to answer traffic citations, and (b) as "an efficient vehicle to resolve the case on its merits without requiring the defendant to appear in court"; (3) That such a requirement is not a "pre-hearing deprivation of property" and does not violate the defendant's constitutional rights, and (4) That "[t]he writ fails to raise an issue of abuse of discretion."

Court of Appeals and eliminating appeals from district courts to circuit courts. It may or may not also be significant that the 1979 legislature, although thus designating district courts as "inferior courts" for the purpose of writs of review, did not also amend ORS 34.110 so as to expressly provide that district courts are "inferior courts" for the purposes of writs of mandamus. In any event, it would appear that in 1979 the legislature considered district courts to be "inferior courts" for at least some purposes.

b. *The facts.*

The following facts were stipulated by the parties at the time of the trial of this mandamus proceeding:

"On the evening of October 16, 1977, while driving on Highway 30 in Columbia County, the Petitioner, Gerald Lynn Mattila, was issued a traffic citation by an Oregon State Police Officer. The citation charged Mr. Mattila with 'exceeding maximum speed' by traveling at 72 miles per hour in a 55 miles per hour zone. Such an offense is a Class C 'traffic infraction,' for which the maximum penalty is a $100 fine. ORS 487.465; 487.475; 484.360(1)(c) [(2)(c)].

"On November 10, 1977, Mr. Mattila appeared before the defendant, Judge James A. Mason, in the District Court of Columbia County, as apparently directed by the traffic citation. Mr. Mattila entered a plea of not guilty to the traffic infraction charge and requested a hearing. Judge Mason advised him that a date and time would be set for a hearing but, meanwhile, he must post the $27 'scheduled bail' as stated on the citation. *Mr. Mattila asked that a hearing be scheduled without his first having to post 'bail,' but Judge Mason refused that request.* Mr. Mattila was directed to the Court clerk's office and given a 'Recognizance/Conditional Release Agreement' to sign.

"Mr. Mattila left the Columbia County Courthouse on November 10 without first posting the $27 'bail' or signing the 'Recognizance/Conditional Release Agreement.' On December 6, 1977, he received a letter from the Defendant advising him that a hearing had been set for December 15 to determine whether he should be held in contempt of court for failure to 'pay scheduled bail' and that if he failed to appear for the hearing or 'remit the balance of the bail prior to hearing' a bench warrant would be issued for his arrest.

"Mr. Mattila appeared in the Columbia County District Court as scheduled on December 15. However, Judge Mason was occupied with other matters and the pro tem judge before whom Mr. Mattila appeared was unwilling to take any action in Mr. Mattila's case. *At that hearing Mr. Mattila renewed*

*his request that a hearing be set on the traffic citation without his first having to post 'bail.'*

"The matter of Mr. Mattila's citation on the alleged traffic infraction remains at the same impasse. Mr. Mattila has not posted the $27 'bail' and Judge Mason has not scheduled a hearing on the merits of the citation as requested by Mr. Mattila." (Emphasis added)

The "Uniform Traffic Citation" was received in evidence, as well as the unsigned "Recognizance/Conditional Release Agreement," which would have required, as an "additional condition" that plaintiff "post $27 bail within 10 days," and the letter of December 5, 1977. It was also stipulated that petitioner was not indigent.

In addition, defendant (Judge Mason) testified that his policy is to require the posting of bail in traffic infraction cases when the defendant appears and requests a hearing; that in his experience 20 to 30 percent of those charged with traffic offenses do not appear to answer the charge; that many of those cited to appear in his court (in St. Helens) are from the state of Washington, and that "a large number of those people never appear." It appears, however, that this petitioner resided not in Washington, but in Columbia County, Oregon, of which St. Helens is the county seat.

Judge Mason also testified that if the court suspends the person's license, that person must pay $25 to have it reinstated; that if the court either has the person arrested or suspends his license the ticket "is still not taken care of," and that the requirement of bail is the "least severe of all options available to the court."

Defendant says in his brief that he "did not admit the allegation that he refused to schedule a hearing unless the petitioner would first post bail." We have examined the record, however, including the transcript of his testimony, and find this allegation to be true. Indeed, it was stipulated that "Mr. Mattila asked

that a hearing be scheduled without his first having to post 'bail,' but Judge Mason refused that request."

It follows, in our judgment, that the issues presented for decision in this case include the question whether, under the facts of this case, defendant could refuse to schedule a trial of this alleged traffic infraction unless defendant first paid $27 as "bail."

### c. *Bail for traffic offenses.*

As previously noted, defendant contends that:

> "[t]he entire statutory scheme pertaining to traffic offense procedure contemplates the use of bail as one way to secure a defendant's appearance to answer to a citation or charge after arrest for a traffic infraction as well as an efficient vehicle to resolve the case on its merits without requiring the defendant to appear in court."

It is important, however, to note the distinction between the use of "bail" for these two purposes. Thus, as stated in "Standards Relating to Pretrial Release," American Bar Association Project on Minimum Standards for Criminal Justice, § 5.3(f), page 59 (1968):

> "Money bail should be distinguished from the practice of allowing a defendant charged with a traffic or other minor offense to post a sum of money to be forfeited in lieu of any court appearance. This is in the nature of a stipulated fine and, where permitted, may be employed according to a predetermined schedule."

In the "commentary" to that section it is also stated that:

> "Many jurisdictions follow the practice, particularly in traffic offenses, of permitting the accused to post cash bail, either with the police or the traffic court, and with at least the implicit understanding that he will not appear and that the money deposited will be forfeited without further action against the accused. The amount of the deposit is always related to the fine applicable to the charged offense. * * * The practice does not involve bail in its true sense, and the two should be clearly distinguished. Whether the

[248]

stipulated fine is an administrative necessity and whether it is consistent with the nature of the criminal process are questions beyond the scope of these standards; but it ought to be clearly recognized for what it is — a form of pleading guilty or *nolo contendere,* and the payment of a fine without court appearance."

The ABA Standards also provide as follows:

§ 1.2(c) — "Money bail. Reliance on money bail should be reduced to minimal proportions. It should be required only in cases in which no other condition will reasonably ensure the defendant's appearance. * * *

"* * * * *

§ 5.1 — "Release on order to appear or on defendant's own recognizance. (a) It should be presumed that the defendant is entitled to be released on order to appear or on his own recognizance. * * *

"* * * * *

§ 5.3 — "Release on money bail. (a) Money bail should be set only when it is found that no other conditions on release will reasonably assure the defendant's appearance in court. (b) The sole purpose of money bail is to assure the defendant's appearance. * * *"

It is of interest to note that Oregon has adopted statutes providing for release of persons charged with crimes, including most felonies, upon their personal recognizance, and without bail. *See* ORS 135.230 to 135.290, including ORS 135.245(3), which provides that:

"The magistrate shall impose the least onerous condition reasonably likely to assure the person's later appearance. A person in custody, otherwise having a right to release, shall be released upon his personal recognizance unless release criteria show to the satisfaction of the magistrate that such a release is unwarranted."

These statutory provisions do not apply to traffic offenses by reason of ORS 135.295, but it would be anomalous to impose more stringent requirements for

bail upon persons accused of traffic offenses than upon persons accused of serious crimes.

Petitioner contends that custodial arrest, and therefore bail, is one of the "indicia" of a criminal prosecution and, as such, is constitutionally impermissible in a traffic infraction case for reasons stated in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977). Petitioner also contends in this case that because, as a result of his refusal to pay $27 as "bail" for a minor traffic offense he could be arrested and put in jail, his constitutional right to due process of law would be violated. Petitioner says that it has been held to be a violation of such constitutional rights to impose greater sanctions upon a defendant prior to trial than may be imposed as a penalty upon his conviction, citing *Rhem v. Malcolm,* 507 F2d 333, 336 (2d Cir 1974), among other cases, and that the maximum penalty for this alleged traffic offense was a fine of $100. In addition, petitioner contends that even though the required payment of $27 would be returned to him in the event of his acquittal, he would meanwhile be deprived of the "use" of that money and that the "use" of property is itself "property" which cannot be taken without due process of law, citing *Sniadach v. Family Finance Corp.,* 395 US 337 (1969).

We find it unnecessary to decide these constitutional issues in this case, however, because we believe that the case may be resolved by an examination of the Oregon statutes relating to traffic offenses, as applied to the facts of this particular case.

"Bail," for the purposes of traffic offenses in Oregon, is defined in ORS 484.010(1) as follows:

" 'Bail' means money or its equivalent deposited by a defendant to secure his appearance for a traffic offense."

For traffic offenses police officers are authorized by ORS 484.100 to either "arrest or issue a citation."

ORS 484.130 provides as follows:

"(1)   A person brought before a magistrate or clerk or deputy clerk authorized by the magistrate for a traffic offense shall be released on giving adequate undertaking to appear in answer to the offense at such time and place as is fixed by the magistrate or clerk or deputy clerk authorized by the magistrate. The magistrate or clerk or deputy clerk authorized by the magistrate may require the arrested person to give as security for his appearance:

"* * * * *

"(b)   If the arrested person has no such automobile association card or certificate, as provided in paragraph (a) of this subsection, or if such card or certificate is not acceptable as bail for the offense for which the arrest was made, such sum as may be required by the magistrate * * *."

Thus, as said by the state in its brief on behalf of defendant judge, citing ORS 484.130:

"If a person is arrested and brought before a magistrate the magistrate may require him to post bail as security for his appearance."

If, however, the person is not arrested by the officer and brought by him before the magistrate, but is given a traffic citation by the officer, such a person then has three options, as provided by ORS 484.150(7). That section requires that traffic citations include the following instructions in the event of a traffic offense such as that given by the officer to the petitioner in this case:

"* * * you MUST do ONE of the following:

"1.   Appear in court at the time mentioned in this summons and request a hearing. *The court will then set a time for a hearing.*

"2.   Mail to the court this summons, together with a check or money order in the amount of the bail indicated on the other side of this summons and tell the court you request a hearing. This summons and the bail must reach the court before the time when this summons requires you to appear in court. If you don't want a hearing, but wish to explain your side, send your explanation with the summons and bail.

[251]

The court will then consider your explanation and may forfeit your bail, or part of it, on the basis of your explanation and what the officer tells the court.

"3. Sign the plea of guilty below and send this summons to the court, together with check or money order in the amount of bail indicated on the other side of this summons. If you wish to explain your side, you may send your explanation with guilty plea, summons and bail." (Emphasis added)

To the same effect, *see* ORS 484.190.

If a person chooses the first of these three options, i.e., to appear personally and request a hearing (rather than to mail the summons to the court with a check for the amount of the indicated "bail" with the understanding that it may be forfeited as a fine) the procedure to be followed by the court in such an event is prescribed by ORS 484.210 as follows:

"(1) If the defendant requests a hearing, or if pursuant to ORS 484.220 the court directs that a hearing be had, *the court shall fix a date and time for the hearing * * *.*" (Emphasis added)

As we read these statutes, a person charged with a Class C traffic infraction, as in this case, who chooses to appear personally before the court at the time and place stated in the citation is then entitled to have the matter scheduled for hearing at a date to be set at that time by the court, regardless of whether or not the court has the power to require such a defendant to post bail. It follows, in our judgment, that this petitioner was entitled to have his case set for hearing, regardless of whether or not he posted bail, as required by defendant judge, and that the judge erred in refusing to do so.

It may be, as contended by the state, that in such cases the court has power to require a defendant to post bail in advance of trial. On the other hand, it may be contended that the Oregon statutes, by their terms, do not provide for the posting of bail for traffic offenses by persons who personally appear and request that a hearing be scheduled and that to require the

posting of bail for minor traffic offenses would be unconstitutional.

We need not decide in this case whether the trial court has power to require that one who appears personally and requests a hearing on a citation for a minor traffic infraction must post bail. Neither need we decide in this case whether, assuming that the trial court has power to require the posting of bail for minor traffic infractions, the facts and circumstances of this case were such as to make it proper for the court to require the posting of bail by this defendant to assure his presence at the hearing for this traffic infraction. This is so because the petition for an alternative writ of mandamus in this case sought only an order requiring a district court "*to schedule a hearing* as requested by petitioner * * * without requiring petitioner to first post any sum as 'bail' * * *."

For these reasons, we hold that the Court of Appeals was in error in dismissing petitioner's appeal in this case and that the circuit court was in error in denying petitioner's alternative writ of mandamus.

Reversed.