Argued and submitted January 7, reversed and
remanded to trial court March 24, 1981

EASTON,
*Petitioner,*

*v.*

HURITA,
*Respondent.*

(No. C-79-6-65, CA 16874, SC 27347)

625 P2d 1290

Thomas Easton, Willamina, in propria persona.

William Gary, Deputy Solicitor General, Salem, argued the cause for respondent. With him on the brief were James E. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and Patrick N. Rothwell, Certified Law Student, Salem.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TONGUE, J.

## TONGUE, J.

This is an action for damages for false imprisonment arising as a result of plaintiff's arrest for a minor traffic offense. It presents the question whether a police officer who stops a person for a minor traffic offense can not only place that person under arrest, but also put him in jail, rather than give him a citation and then release him, when the maximum penalty for the infraction is a fine of $250.

More specifically, however, the question presented for decision is whether plaintiff's complaint alleged sufficient facts to constitute a cause of action for false imprisonment. Defendant's demurrer to those allegations of plaintiff's complaint was sustained by the trial court. The resulting judgment in favor of defendant was affirmed by the Court of Appeals without opinion. 48 Or App 222, 617 P2d 974 (1980).[1] We allowed plaintiff's petition for review to consider and decide these questions.

The pertinent allegations of the second cause of action in plaintiff's amended complaint, to which defendant's demurrer was sustained, are as follows:

"On May 30, 1979, defendant was employed by the Oregon State Police as a corporal and located in Gold Beach, Curry County, Oregon.
"* * * * *
"At said time and place defendant, acting outside the scope of his employment by disregarding ORS chapter 484, intentionally, wrongfully, unlawfully, and maliciously placed plaintiff under a full custody arrest for a minor traffic infraction by causing plaintiff to be lodged in the Curry County Jail in Gold Beach, Oregon."

The essence of these allegations is that a police officer made a full custody arrest of the plaintiff for a minor traffic offense and then put the plaintiff in jail.

As held by this court in *Knight v. Baker,* 117 Or 492, 495-96, 244 P 543 (1926):

" 'In order to establish the offense of false imprisonment, it is only necessary on behalf of the plaintiff to show

---

[1] Plaintiff's complaint also alleged a cause of action for battery by defendant in the course of his arrest of the plaintiff. A trial was held on those allegations, resulting in a jury verdict in favor of defendant.

the imprisonment. After this is done, the law presumes it unlawful until the contrary is shown, and it is a settled rule that he need not prove malice, nor want of probable cause.'"

To the same effect, *see Brown v. Meier & Frank Co.,* 160 Or 608, 614-15, 86 P2d 79 (1939). *See also Christ v. McDonald,* 152 Or 494, 500, 504, 52 P2d 655 (1935); *Kraft v. Montgomery Ward & Co.,* 220 Or 230, 244, 315 P2d 558, 348 P2d 239 (1957), and *Pearson v. Galvin,* 253 Or 331, 337, 454 P2d 638 (1969). *Cf. McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978).

As held, however, in *Brown v. Meier & Frank Co., supra,* at 615:

"'When, however, the plaintiff by his own evidence shows that he was detained or imprisoned as a result of judicial proceedings, and by the issuance and execution of a warrant or other legal process issued thereon, he is required, in order to make a prima facie case of false imprisonment, to show something more than a mere detention or imprisonment.'"

The question thus arises whether it appears from the allegations of this complaint that plaintiff's detention and imprisonment was the result of legal process of such a nature as to carry with it a presumption of validity which plaintiff was required to overcome by the allegation of additional facts.

It is contended by the Attorney General, appearing on behalf of defendant police officer, that ORS 484.100(1) creates such a presumption of validity. That statute provides:

"A police officer *may arrest* or issue a citation to a person for a traffic offense at any *place* within the jurisdictional authority of the governmental unit by which he is authorized to act." (Emphasis added)

The Attorney General then cites Restatement 2d Torts, § 118, Comment B, for the rule that:

"Where a privilege to arrest exists, it justifies not only the confinement but also any conduct which is reasonably necessary to effect the arrest."

and says that:

"Defendant's demurrer was * * * based on the privilege set forth rule in Restatement 2d Torts, § 118, Comment B."

Based upon these authorities, the state contends that:

"Thus, on its face, plaintiff's complaint established defendant's privilege to confine and the demurrer was properly sustained."

It would appear upon a reading of ORS 484.100 as a whole that its purpose was to define the *place* where an officer may make arrests for traffic offenses, not to confer authority upon them to make such arrests.

ORS 484.350(4), however, provides that:

"A police officer may exercise the authority granted by ORS 133.310 and 484.100 to arrest an individual for a traffic infraction."

ORS 133.310 provides:

"(1) A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

"* * * * *

"(b) Any other offense in the officer's presence."

It would therefore appear that ORS 484.350(4) and ORS 133.310 grant police officers the authority to arrest a person for a minor traffic offense.[2] The question remains, however, whether it follows from the power of an officer to arrest a person for a traffic infraction that the officer also has power to put in jail a person arrested for a traffic infraction when the maximum penalty for such an infraction is a fine of $250. (ORS 484.360).

Plaintiff appears to contend that there is a distinction between the authority of an officer to arrest a person for a minor traffic infraction and his authority to put such a person in jail. He relies upon the provisions of ORS 484.435(1), which provides as follows:

"Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the

---

[2] It may be that although ORS 484.350(4) and ORS 133.310(3) appear to give police officers authority to make full custody arrests for minor traffic offenses, such authority cannot be exercised *maliciously,* as alleged by plaintiff's complaint in this case. We do not consider that question because it was not raised by the plaintiff either in the trial court or on appeal.

decision to place the person arrested under full custody arrest is *based upon specific articulable facts justifying his being lodged in jail rather than being given a traffic citation* as provided in this chapter and released." (Emphasis added)

The Attorney General answers this contention as follows on behalf of the defendant:

"Firstly, there is no indication in the record that defendant Hurita did not have 'specific articulable facts' to arrest plaintiff. Secondly, such a standard is not applicable to plaintiff's arrest since no issue of search and seizure was presented. The 'specific articulable facts' language comes from ORS 484.435(1) which deals with search and seizure."

In response, plaintiff contends that "specific articulable facts" are required by the provisions of ORS 484.435(1) before a person can be lodged in jail for a minor traffic offense, and that his complaint was thus sufficient against defendant's demurrer because the burden was on defendant to allege and prove facts justifying putting the plaintiff in jail.

■        Upon examination of ORS 484.435(1), we find that its provisions are somewhat ambiguous. In such a case we believe that it is our duty to interpret such a statute in such a manner as to be consistent with the intention of the legislature as expressed in the legislative history of the statute and in the policy expressed by it in the enactment of other statutes, and also in such a manner as to avoid any serious constitutional problems and to be consistent with previous decisions by this court.

We first review recent decisions of this court which have discussed the authority of police officers to detain persons for minor traffic offenses under Oregon's 1975 revision of the Motor Vehicle Code, which sought to decriminalize minor traffic infractions and, in doing so, removed many of the constitutional safeguards afforded defendants in criminal prosecutions.

In *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), this court examined the revised Motor Vehicle Code to determine whether driving under the influence of intoxicants (DUII), though denominated as a "traffic infraction," was in fact still criminal in nature

and was to be afforded constitutional safeguards guaranteed defendants in criminal prosecutions. In answering that question, we examined various indicia of criminal offenses, including the use of arrest and detention by police. We said (at p. 108):

> "Of course a traffic offender must be subject to being *stopped,* compare ORS 131.605-131.615, and in the case of apparent intoxication prevented from resuming his driving. Often that could be accomplished by other means. *But detention beyond the needs of identifying, citing, and protecting the individual or 'grounding' him, especially detention for trial unless bail is made, comports with criminal rather than with civil procedure* and is surely so perceived by the public." (Emphasis added)

We also said (at p. 108, n. 16):

> "Of course this single element does not turn all traffic offenses into criminal prosecutions. We feel safe in assuming that it is more important to the legislative scheme of the Oregon Vehicle Code to decriminalize traffic infractions *than to retain the incompatible aspects of 'full custody' detention for those offenses that otherwise are effectively decriminalized." (Emphasis added)*

It is also of interest to note that Holman, J., dissenting in *Brown,* said (at 114) that:

> "No person may constitutionally be held to answer to a civil charge in lieu of bail, and such a provision is patently unenforceable."

We again discussed the propriety of detaining a person for a minor traffic infraction in *State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979). In that case a police officer stopped a person who rode a bicycle through a stop sign and gave a name which the officer did not believe to be his true name, after which the officer took the defendant to the police station until his identity was established. This court, after holding such a stop to be valid, said (at 497) that:

> "The limits of our holding on this point should be made clear. ORS 484.100(1) authorizes a police officer to arrest a person for a minor traffic offense. In the context of a traffic stop, ORS 484.435 contemplates the possibility of a 'full custody arrest,' but does not say when such an arrest may be made. We are not required in this case to consider the limits of a police officer's authority to make an arrest for a minor traffic offense. *Cf. Brown v. Multnomah County*

*Dist. Ct.,* 280 Or 95, 108, 570 P2d 52 (1977), and *Id.* 280 Or at 114 (Holman, J., dissenting). We need not and we do not hold that the defendant in this case could have been 'arrested' as that term is understood in common usage - that he could have been held in jail, unless he posted bail, to answer to a charge of running a stop sign. We consider here only the reasonableness of a temporary detention, for a limited purpose, under the particular facts of this case."

By footnote at 498, however, we also said that:

"We do not intend to suggest that the police may hold a traffic offender whose identity is in question for any particular period of time. *Once identity is satisfactorily established the offender should be cited and released unless grounds for further detention appear.* In the present case, defendant's identity had not yet been satisfactorily established when the new information was received. Two hours is not so long a period as to indicate, of itself, that the police were not proceeding with their investigation in good faith." (Emphasis added)

Finally, in *Mattila v. Mason,* 287 Or 235, 598 P2d 675 (1979), we considered the permissibility of bail for minor traffic offenses. At page 250 we stated:

"It is of interest to note that Oregon has adopted statutes providing for release of persons charged with crimes, including most felonies, upon their personal recognizance, and without bail. *See* ORS 135.230 to 135.290, including ORS 135.245(3), which provides that:

" *The magistrate shall impose the least onerous condition reasonably likely to assure the person's later appearance. A person in custody, otherwise having a right to release, shall be released upon his personal recognizance unless release criteria show to the satisfaction of the magistrate that such a release is unwarranted.'* (Emphasis added)

"These statutory provisions do not apply to traffic offenses by reason of ORS 135.295, but it would be anomalous to impose more stringent requirements for bail upon persons accused of traffic offenses than upon persons accused of serious crimes."

We then undertook to construe the Oregon statutes relating to the giving of bail for traffic offenses, including ORS 484.010(1), 484.130, 484.150, and 484.210, in such a manner as to be consistent with the policy of ORS

135.245(3), requiring that the least onerous conditions be used to insure a person's appearance in court.

It is apparent from our analysis in these three cases that although police officers have authority to *arrest* a person for a minor traffic infraction, their authority to put in jail a person arrested for such an offense is not without limits. We have consistently noted that detention beyond the minimum necessary for identification and citation must be supported by further grounds and that procedures regarding minor traffic infractions must be designed so that only the least onerous conditions necessary to insure a defendant's appearance are imposed. ·

Indeed, our reasoning in *Brown, supra,* suggests that to put in jail a person arrested for a traffic infraction is constitutionally incompatible with decriminalizing traffic infractions and removing constitutional safeguards normally afforded to criminal defendants. As noted in *Brown,* however, for most minor traffic offenses it may be more important to decriminalize the traffic infraction than to retain the "incompatible aspects of 'full custody' detention." *Brown, supra,* at 108 n. 16.

This same view regarding the problem of detention for a minor traffic offense without sufficient reasons was strongly articulated by the Washington Supreme Court in a recent opinion. In *State v. Hehman,* 90 Wash 2d 45, 578 P2d 527 (1978), that court considered the question: "Was it reasonable and constitutionally permissible to take the defendant into custody and transport him to jail for minor traffic violations?" In holding that this was "impermissible," the court said (at 528) that this holding was also "in keeping with the clear spirit of legislation and with the entire trend of the judicial and legislative philosophy in the field of traffic offenses," citing various authorities, including the Uniform Vehicle Code of 1954, the ABA Standards Relating to Pretrial Release, and LaFave, Arrest, 168 et seq (1968), and concluding that "it makes little sense to jail a man who, when he appears before the judge, will clearly qualify for release without bail." The court went on to hold, however (at 529), that:

"* * * We do not imply that a law enforcement officer must disregard custodial arrest *if he has other grounds*

*apart from the minor traffic violation itself."* (Emphasis added.)

To the same effect, Justice Stewart, in a concurring opinion in *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 LEd 2d 456 (1973), stated:

"It seems to me that a persuasive claim might have been made in this case that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments." *Id.* at 266.

Because the defendant in that case had not made such a contention, however, the Court did not address that issue.

With this background in mind, we proceed to a discussion of the applicable statutes relating to police authority to arrest and incarcerate for minor traffic offenses.

As noted, ORS 484.100, 484.350, and 133.310 authorize an officer to make an arrest for a minor traffic infraction. As also noted, however, ORS 484.435(1) appears to place a limitation on that authority, at least when persons arrested for traffic offenses are put in jail by the arresting officer. That statute provides:

"Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the decision to place the person arrested under full custody arrest is *based upon specific articulable facts justifying his being lodged in jail rather than being given a traffic citation* as provided in this chapter and released." (Emphasis added)

We do not agree that ORS 484.435(1) must be interpreted, as contended by the state and by the dissent, as addressing only the issue of when a *search* may be made of persons arrested for minor traffic infractions and that it has no application to the authority of police officers to put in jail persons arrested for minor traffic infractions. Such an interpretation of the statute would essentially say that even though an officer may not search a person arrested for a minor traffic offense without specific articulable facts, the officer may nevertheless put such a person in jail

without specific articulable facts. Under such an interpretation of ORS 484.435(1) a person arrested for a minor traffic infraction could be put in jail without first being searched, which would be an absurd result, considering the danger of putting persons in jail who may have weapons or drugs, requiring that, as a practical matter, all persons put in jail must first be searched. Yet by the express terms of the statute, a search is permissible only when the incarceration is based upon specific articulable facts.

Such an interpretation also fails to adequately explain the purpose of the phrase "specific articulable facts justifying his being lodged in jail." If the statute were solely concerned with an officer's authority to search a person, as contended by the state, then the statute should have read "specific articulable facts justifying his being searched," rather than the current language. Also, as previously noted, the state's interpretation presents additional problems resulting from an interpretation which would say that even though the legislature specifically provided that there must be "specific articulable facts justifying his being lodged in jail," the legislature nevertheless intended to give police officers the authority to put persons in jail for minor traffic offenses even when no such "specific articulable facts" exist.

We believe that a more reasonable interpretation of ORS 484.435(1) is that the legislature, by recognizing that incarceration for a minor traffic offense would be justified only in special circumstances, intended to limit a police officer's authority to take such action to cases in which those circumstances are present. It follows, in our opinion, that the legislature intended that a police officer shall have no authority to put a person in jail for a minor traffic offense unless he can point to "specific articulable facts justifying his being lodged in jail," as expressly provided by ORS 484.435(1).

We find support for this conclusion in the legislative history of ORS 484.435. The statutory provision in dispute was added to the bill at the request of Michael Gillette, then Solicitor General (now a judge of the Court of Appeals). According to the minutes of a hearing on that statute held on March 5, 1975, before the Senate Committee on the Judiciary, he stated that:

"* * * Section 143 (now ORS 484.435) as it appears in the proposed bill arises out of a valid concern about police harassment of people charged with relatively innocuous traffic infractions. Under the United States Supreme Court decisions in U.S. vs. Robinson and Gustafson vs. Florida and under the subsequent Oregon Supreme Court decision in the State vs. Florence, (sic) an individual who is subject to a full custody arrest and who is going to be taken to jail and booked is subject to a complete search of his person. Under ORS 142.210, a jailer who receives a person brought in under full custody arrest is required to conduct an inventory of that individual's valuables. As a result, Section 143 and Florence and the other statute I have described would be in conflict in those rare instances where there is some basis for taking the individual into custody in spite of the fact that the offense is fairly innocuous. For instance, the driver's license he displays may be sufficiently different from his physical description to project that he is proceeding under an alias and may be wanted. *Under those rare instances in which an officer can point to specific articulable facts to justify placing the individual in jail, it is probably a good idea to conform Section 143 with the present search and seizure law and the present arrest law in Oregon.* I present this amendment for that limited purpose and I want to lay special emphasis on the fact that *the officer will have to be able to point to specific articulable facts that would justify placing the individual in custody.*" (Emphasis added)

Thus, it appears that in submitting to the legislature the provisions of what is now ORS 484.435, it was the intended purpose of the Solicitor General of Oregon that a person stopped for a minor traffic offense may not be "placed in jail" by the officer in the absence of "specific articulable facts." This is apparent from the language emphasized above. This conclusion also logically follows from the Solicitor General's explanation of how Section 143 (ORS 484.435(1)) would conform to existing law. He stated that it was his intent that the legislature "conform Section 143 with the present * * * arrest law in Oregon," which he understood to require that a search occur whenever a person was lodged in jail. To read ORS 484.435(1) as conforming with that understanding of Oregon law requires an interpretation to the effect that police officers only have authority to "place the individual in jail" for a

minor traffic offense when he can point to "specific articulable facts justifying his being lodged in jail."

In reaching this conclusion, we also believe it to be significant that the Attorney General had previously considered much the same question as that presented in this case and published an opinion which, in our view, is not only inconsistent with the position taken by him in this case, but supports that of this plaintiff. *See* 38 Attorney General Opinions, 960 (1977). That opinion considered the question:

> "Under what conditions can a law enforcement officer take into custody a person who commits a traffic infraction?"

and gave the following answer:

> "Whenever an individual commits any class of traffic infraction, the police officer has the option to either issue a citation or place the individual under arrest."

The opinion also considered the further question:

> "Can a person who has been arrested by a law enforcement officer for committing a traffic infraction be incarcerated in the county jail?"

To that question the answer given was "yes."

The Attorney General appeared to make a distinction between the authority of a police officer who stops a person for a minor traffic offense to make a full custody arrest of that person and his authority to have such a person put in jail. Thus, although that opinion considered ORS 133.005(1) which defined arrest, as well as ORS 133.310, the opinion went on to consider ORS 484.435 and concluded, after considering the provisions of that section, that:

> "This section thus expressly recognizes that a full custody arrest, with the accused lodged in jail, may be made where there is a traffic infraction.
>
> "Recognizing this, *there still remains the general policy of Section 484.350 to treat traffic infractions as non-criminal offenses.* Section 484.350(1) classifies an offense as a traffic infraction 'if the offense is punishable only by a fine, forfeiture, suspension or revocation of a license or other privilege, or other civil penalty.' Subsection (2) states, 'A person who commits a traffic infraction shall not

suffer any disability or legal disadvantage based upon conviction of a crime.'

"Section 484.350 is distinguishable from the issue at hand in that the section concerns classifications and dispositions of offenses while this issue concerns incarceration upon arrest. Nevertheless, *this general policy should be taken into consideration in determining the question of what circumstances would justify incarceration.*

"Generally, the only legitimate pretrial purpose for incarcerating an individual who is accused of committing an offense and who is unable to make bail is to insure the presence of that individual at the trial or any other proceeding in connection with the offense, or in the case of an intoxicated person, to protect the individual's and the public's safety. *In the case of an arrest for a class B, C or D traffic infraction, 'specific articulable facts' are required to justify a conclusion that incarceration is necessary * * *."* (Emphasis added)

It should also be noted that both the Ninth Circuit Court of Appeals and this state's Court of Appeals have adopted a similar interpretation of ORS 484.435(1). *See United States v. Thompson,* 597 F2d 187 (9th Cir 1979); *State v. Tucker,* 34 Or App 203 (1978); *State v. Carter/Dawson,* 34 Or App 21 (1978).

■     In light of our analysis of ORS 484.435(1), supported by its legislative history and by the reasoning of the Attorney General's opinion, and supported also by the policy of the legislature as expressed in other statutes and as recognized by previous decisions of this court, as well as by the need to avoid constitutional questions that might arise from a contrary interpretation of this statute, we hold that a police officer may not lodge a person in jail for a minor traffic offense unless the officer can point to "specific articulable facts justifying his being lodged in jail." It should be noted that in holding as we do, we need not decide whether an officer who stops a person for a minor traffic offense may or may not make a full custody arrest of that person under the authority of ORS 133.310 and ORS 484.350 in the absence of "specific articulable facts." That question is not presented for decision in this case.

■     We return, then, to the question whether, in the light of these conclusions, plaintiff's complaint alleged

facts sufficient to state a cause of action for false imprisonment. As previously stated, in order to allege the offense of false imprisonment, it is only necessary to allege the imprisonment. As held by this court in *Knight v. Baker, supra,* at 495 (also involving a plaintiff who was put in jail by a police officer), the law then presumes that the imprisonment is unlawful until the contrary is shown, and the burden is then upon the defendant (the police officer in that case) to show justification for the imprisonment. To the same effect, *see Christ v. McDonald,* 152 Or 494, 52 P2d 655 (1935), also an action for false imprisonment by a police officer, despite its recognition (at 504) that "[a] policeman is presumed to know the law regulating his duty and to act within the law."

As also previously noted, it appears from plaintiff's complaint that he was arrested for a minor traffic offense by a state police officer, who then put the plaintiff in jail. For reasons previously stated, however, although a police officer may stop a person for a minor traffic offense, he may not put that person in jail unless he can justify doing so by showing "specific articulable facts justifying his being lodged in jail."

■        Upon application of these rules of law to the complaint in this case, we are of the opinion that because an officer who stops a person for a minor traffic offense cannot legally put that person in jail unless the officer can justify that action by such "specific articulable facts," the allegations of this complaint, which alleged that defendant arrested plaintiff for a minor traffic offense and then put him in jail, alleged facts sufficient to constitute a false imprisonment and that it was then for the officer, as the defendant, to justify that action, if he could, by alleging the existence of "specific articulable facts" which would authorize him to cause the plaintiff to be put in jail. For these reasons, the trial court erred in sustaining the defendant's demurrer to plaintiff's complaint, and the Court of Appeals was in error in affirming that ruling.

■        Plaintiff also contends that the trial court erred in allowing defendant State of Oregon's motion to dismiss the state as a co-defendant in the case. That motion was made under ORCP 21(A)(5) on the grounds that the court lacked

jurisdiction over the state because the state had not been served with a summons or complaint. Plaintiff contends, among other things, that the state made general appearances so as to grant the court jurisdiction, and that the state failed to consolidate the motion to dismiss with prior motions made by the state, thus waiving its right to file the motion to dismiss under the new Oregon Rules of Civil Procedure.

We find that these contentions have no merit. It is clear from the record that plaintiff failed to serve the state with either a summons or complaint. It also appears that the state did not participate in any motions or responsive pleadings filed prior to its motion to dismiss, contrary to plaintiff's contentions. All prior motions and responsive pleadings were made solely by defendant Hurita.

The state's only motion and appearance in this case was made on January 10, 1980, in a motion to dismiss under ORCP 21(A) (5)[3] for insufficiency of service of summons. Plaintiff contends that this constituted a general appearance so as to confer jurisdiction. The motion, however, was made under the new Oregon Rules of Civil Procedure,[4] which abandons the concept of special appearances to attack jurisdiction, and provides instead that a motion to dismiss may be used for that purpose. ORCP 21(A)(5). Defendant properly made such a motion, and we find the trial court did not err in allowing the motion.[5]

Because, however, it was error to sustain the demurrer of defendant Hurita to plaintiff's complaint for

---

[3] ORCP 21(A)(5) provides:

"A. How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: * * * (5) insufficiency of summons or process or insufficiency of service of summons or process * * *."

[4] The new Oregon Rules of Civil Procedure became effective January 1, 1980.

[5] Plaintiff also contends that the "trial court erred in allowing plaintiff's complaint to go to trial (on plaintiff's alleged cause of action for battery) if any of the previous assignments of error are found for plaintiff." We also find this contention to be without merit. We will not address plaintiff's contention raised in his petition for review that during the trial on that cause of action the trial court improperly instructed the jury that the arrest was lawful, because no proper assignment of error on that instruction was raised before the Court of Appeals.

false imprisonment, this case must thus be remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

**DENECKE, C. J.,** dissenting.

I dissent from that portion of the decision which holds that the defendant's demurrer was improperly sustained. I dissent for the reason that I am of the opinion that ORS 484.435(1) does not prohibit an officer from placing a person in jail for a minor traffic offense unless he has "specific articulable facts" to justify his action.

ORS 484.350(4) provides:

"A police officer may exercise the authority granted by ORS 133.310 and 484.100 to arrest an individual for a traffic infraction."

ORS 133.310(1) provides:

"A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

"* * * * *

"(b) Any other offense in the officer's presence."

A traffic infraction is an offense. ORS 484.350.

For the purposes of ORS 133.310 arrest is defined:

"(1) 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging him with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

In my opinion these statutes authorize an officer to put an offender in jail for a traffic infraction unless another statute provides to the contrary. The majority contends ORS 484.435(1) does provide to the contrary.

ORS 484.435(1) provides:

"Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the decision to place the person arrested under full custody arrest is based upon specific articulable facts justifying his

being lodged in jail rather than being given a traffic citation as provided in this chapter and released."

The majority finds the provisions of this statute are "somewhat ambiguous" with which I agree, but not in the respects relevant to the issue in this case. The statute does not in any way limit the right to arrest; to the contrary, it is only applicable when an arrest of some kind is made on a charge of committing a Class B, C or D traffic infration; it appears to acknowledge that "a full custody arrest in which the person arrested is to be lodged in jail" can be made on the charge of committing a Class B, C, or D traffic infraction. The statute expressly provides that if a full custody arrest is made with the person lodged in jail, "searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized * * * unless the arrest * * * is based upon specific articulable facts * * *."

I do not read Judge Gillette's testimony in support of the bill which became ORS 484.435 as being contrary to the conclusion I reach. The three court decisions he cites concern the scope of search and seizure, not arrest. In *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed2d 427 (1973), the defendant was arrested for a traffic offense, driving when his driver's license had been revoked, and placed in jail. The holding was that "in the case of a lawful custodial arrest a full search of the person" is permitted by the Fourth Amendment. 414 US at 235. In *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 L Ed2d 456 (1973), the defendant was arrested for failure to have his operator's license in his possession. The officer searched the defendant at the time of the arrest. Again, the holding of the court was that a full body search was permitted under the Fourth Amendment. In *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), the issues were "relating to the nature and scope of the search of a person as an incident to an arrest * * *." 270 Or at 173. We followed *United States v. Robinson, supra,* and *Gustafson v. Florida, supra.*

Lent, J., joins in this dissenting opinion.