Filed: November 10, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON

Respondent on Review,

v.

DAVID LEE SWANSON,

Petitioner on Review.

(CC 071371M; CA A140575; SC S059135)

On review from the Court of Appeals.*

Argued and submitted September 20, 2011.

Jedediah Peterson, Deputy Public Defender, Officer of Public Defense Services, Salem, argued the cause for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender.

Andrew M. Lavin, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before, De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

LINDER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

*Appeal from Josephine County Circuit Court, Pat Wolke, Judge. 237 Or App 508, 240 P3d 63 (2010).

**Landau, J., did not participate in the consideration or decision of this case.

LINDER, J.

In this case, defendant was charged with reckless driving, which is a misdemeanor.[1] In his ensuing jury trial, defendant asked the trial court to instruct the jury on the elements of careless driving, which is a traffic violation, arguing that it is a lesser-included offense of reckless driving.[2] The trial court declined to give defendant's requested instructions. On appeal, the Court of Appeals affirmed. *State v. Swanson*, 237 Or App 508, 240 P3d 63 (2010). The Court of Appeals reasoned that violations and crimes are distinctive categories of offenses and, under ORS 136.465, juries are authorized to consider only lesser-included crimes, not lesser-included violations, of a charged crime. *Id*. at 511. That understanding of the legislature's intent was reinforced, the court concluded, by substantial procedural differences between violation proceedings and criminal proceedings, including the requirement that violations be "tried to the court sitting without jury." ORS 153.076(1); *see Swanson*, 237 Or App at 513 (so stating). We allowed defendant's petition for review. As we will explain, we agree that ORS 136.465 does not extend to lesser-included violations and is, instead, limited to lesser-included criminal offenses. We therefore affirm.

---

[1]     *See* ORS 811.140 (setting out elements of reckless driving and providing for punishment as a Class A misdemeanor).

[2]     *See* ORS 811.135 (setting out elements of careless driving; designating offense as either a Class A or Class B traffic violation, depending on the circumstances of the offense; authorizing a sentence that includes a fine, but not authorizing a term of imprisonment).

1

ORS 136.465 provides:

> "In all cases, the defendant may be found guilty of any *crime* the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."

(Emphasis added.) As the italicized text emphasizes, the statute expressly refers to any "crime" the commission of which is necessarily included in the charged crime. The term "crime" is not defined in the statute itself, or in any statute that specifically cross-references ORS 136.465. It is defined, however, elsewhere in the criminal code. In particular, ORS 161.515 provides: "A crime is an offense for which a sentence of imprisonment is authorized." ORS 161.515. The term "offense," in turn, is defined as "either a crime, as described in ORS 161.515, or a violation, as described in ORS 153.008." ORS 161.505. Under ORS 153.008,[3] an offense is a violation if, *inter alia*, it

---

[3] ORS 153.008 provides:

> "(1) Except as provided in subsection (2) of this section, an offense is a violation if any of the following apply:
>
> "(a) The offense is designated as a violation in the statute defining the offense.
>
> "(b) The statute prescribing the penalty for the offense provides that the offense is punishable by a fine but does not provide that the offense is punishable by a term of imprisonment. The statute may provide for punishment in addition to a fine as long as the punishment does not include a term of imprisonment.
>
> "(c) The offense is created by an ordinance of a county, city, district or other political subdivision of this state with authority to create offenses, and the ordinance provides that violation of the ordinance is punishable by a fine but does not provide that the offense is punishable by a term of

2

is designated as such or is punishable by a fine but not by a term of imprisonment. Thus, under those statutes, "violations" and "crimes" are distinct types of "offenses," distinguished principally by the fact that crimes are punishable by imprisonment and violations are not. Because they are distinct types of offenses, the fact that a statute uses the term "crime" (as does ORS 136.465) and not the term "violation" would seem at first blush to compel a conclusion that the legislature intended the statute to reach crimes but not violations. In the context of ORS 136.465, that would mean that a crime that is lesser-included offenses of a crime with which a defendant is charged may be submitted to a jury, but a lesser-included violation may not, as the Court of Appeals concluded. *Swanson*, 237 Or App at 511.

Defendant concedes that, if those definitions of "violation" and "crime" apply, then ORS 136.645 did not permit the jury to consider a charge of careless driving

---

imprisonment. The ordinance may provide for punishment in addition to a fine as long as the punishment does not include a term of imprisonment.

"(d) The prosecuting attorney has elected to treat the offense as a violation for purposes of a particular case in the manner provided by ORS 161.566.

"(e) The court has elected to treat the offense as a violation for purposes of a particular case in the manner provided by ORS 161.568.

"(2) Conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime."

The parties agree, and ORS 811.435 establishes, that careless driving is a "violation." The question that remains is whether a "violation" is within the meaning of the term "crime," as it is used in ORS 136.465.

in this case.  He takes issue, however, with the conclusion that those definitions apply. Defendant's argument resolves into two propositions:  (1) when ORS 136.465 was originally enacted, the term "crime" included offenses that were punishable only by fines and would therefore be denominated today as a "violation;" and (2) that the original scope of ORS 136.465 has remained the same, and has been unaffected by more recently enacted definitions of the term "crime" that apply to other statutes in the criminal code.

In interpreting a statute, the court's goal is to determine the legislature's intent.  *State v. Gaines*, 346 Or 160, 171, 206 P3d 1041 (2009).  In doing that, we look to the intent of the legislature that enacted the statute, and we also consider any later amendments or statutory changes that were intended by the legislature to modify or otherwise alter the meaning of the original terms of the statute.  *See*, *e.g.*, *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (proper inquiry in interpreting statute focuses on what the legislature intended at the time of enactment); *see also Mastriano v. Board of Parole*, 342 Or 684, 696, 159 P3d 1151 (2007) (examining post-enactment legislative changes to statute and statutory context to determine whether they reflected a legislative intent to alter the meaning of statute as originally enacted).  As we will explain, we are not persuaded that ORS 136.465, as originally enacted, would have applied to what qualifies as a violation under our current criminal code.  In all events, as we will further explain, we are satisfied that later comprehensive changes to the criminal code were intended to, and did, alter the meaning of the term "crime," as it is used in statutes throughout the code, including ORS 136.465, to exclude violations.

We begin with defendant's first proposition -- that, as originally enacted,

4

ORS 136.465 applied to offenses that, because they were punishable only by a fine, would today be designated as "violations." As defendant correctly observes, our state's original "lesser-included offense" statute was part of the 1864 Deady Code and was essentially identical in its wording to ORS 136.465. In particular, the Deady Code statute permitted a jury to consider any lesser-included "crime" of the offense with which the defendant was charged.[4] At that time, "crimes" were either "felonies" or "misdemeanors," and the two categories of crimes were distinguished solely by how they were punished. A "felony" was a crime that was punishable by death or imprisonment, and "[e]very other crime [was] a misdemeanor." General Laws of Oregon, Crim Code, ch I, §§ 2, 3, 4, pp 441-42 (Deady 1845-1864).

Defendant compares that classification scheme to that of our current criminal code, under which, as we have described, an "offense" is either a "crime" or a "violation," depending on whether it is punishable by a term of imprisonment (making it a crime) or by a fine but not a term of imprisonment (making it a violation). Defendant asserts that what is, under the current scheme, a violation punishable solely by a fine

---

[4]     Thus, the original statute provided:

"In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the indictment, or of any attempt to commit such crime."

General Laws of Oregon, Crim Code, ch XVII, § 164, pp 468-69 (Deady 1845-1864). The change from the original "indictment" wording to the present "accusatory instrument" wording occurred in 1973, as part of a complete revision of the criminal procedure code. Or Laws 1973, ch 836, § 244.

would qualify as a "crime" under the 1864 version of the lesser-included offense statute.

Defendant's premise -- and particularly his assessment of the category of offenses now denominated as "violations" -- may overlook other distinctions between current-day violations and Deady Code-era crimes. To be sure, one distinguishing characteristic of a violation is the fact that only a fine, and not imprisonment, may be imposed for the offense. But the distinctive nature of a violation goes beyond that. Violations under our current criminal code are charges that have been "decriminalized." A determination of guilt for such an offense cannot carry criminal consequences of any sort, as the legislature has expressly declared: "Conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime." ORS 153.008(2). For that reason, prosecutions for violations are not subject to the constitutional procedural protections that are required for crimes. *See*, *e.g.*, ORS 153.076(1), (2), and (5) (violation proceedings shall be tried to the court sitting without jury; charged violation must be proved by a preponderance, rather than a reasonable doubt, standard; defense counsel shall not be provided at public expense); *see generally Easton v. Hurita*, 290 Or 689, 697, 625 P2d 1290 (1981) (discussing constitutional implications of decriminalizing traffic infractions); *Mattila v. Mason*, 287 Or 235, 250, 598 P2d 675 (1979) (same); *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 99-110, 570 P2d 52 (1977) (same). In short, violations under the current classification system, given their noncriminal nature and the different procedures that apply to them, had no

6

counterpart under the Deady Code.[5] That fact undermines defendant's premise that a violation under our current criminal code would have been a "crime" for purposes of the original lesser-included offense statute that was part of the Deady Code in 1864.

However, even accepting defendant's premise for purposes of our analysis, his argument depends on a second proposition -- that later legislation has not changed the meaning and scope of the term "crime" as it is now used in ORS 136.465. As we will explain, we conclude that when the legislature comprehensively revised the Oregon Criminal Procedure Code, of which ORS 136.465 is a part, it did so intending the general classification system that it had adopted in its 1971 revisions to the Oregon Criminal Code to control, including the definitions of terms such as "crime" and "violation."

As we earlier noted, "crime" is defined in ORS 161.515 as follows:

"(1) A crime is an offense for which a sentence of imprisonment is authorized.

"(2) A crime is either a felony or a misdemeanor."

That definition was adopted in 1971 as part of a complete revision of Oregon's criminal

---

[5] In 1864, certain misdemeanors and lesser felonies could be prosecuted in "Justices' Courts" rather than circuit courts, following different procedures than the circuit courts followed. For example, criminal matters were initiated in Justices' Courts by means of a private complaint, rather than an indictment, and were prosecuted by the private complainant. All criminal prosecutions in Justices' Courts, however, were triable to a jury under the same criminal procedures that applied in the Circuit Courts. *See generally* General Laws of Oregon, Jus Code, ch I, § 2, p 583 (describing criminal jurisdiction of Justices' Courts); *id*. at ch X, §§ 78-105, pp 597-602 (describing procedures in criminal actions in Justices' Courts). There was no concept of an offense that, due to its noncriminal nature, could be prosecuted in any court in the state without the procedures and protections constitutionally required in criminal cases.

code. Or Laws 1971, ch 743, § 66. The revision, which was spearheaded by a legislatively-appointed Oregon Criminal Law Revision Commission, was the culmination of a years-long project to replace the existing criminal code, which was "replete with overlapping and seemingly inconsistent crimes and penalties[,]" with one that was modern and "internally consistent." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, Foreword, XXII (July 1970). The new definition of the term "crime," along with other new definitions -- of "offense," "felony," "misdemeanor," and "violation" -- was an essential component of a new offense classification scheme that grouped and punished offenses according to their seriousness. *Id*. at Foreword, XXIII.

Notably, the 1971 Oregon Criminal Code was an overhaul of Oregon's *substantive* criminal law, and did not amend the statutes pertaining to criminal procedure, including ORS 136.465. Relying on that fact, defendant argues that, in the absence of any suggestion in the 1971 statute to the contrary, we must assume that the statute's narrower definition of the term "crime" was intended to apply only to the use of the term *within* the 1971 Criminal Code and to have no effect on its meaning in statutes outside that code, such as ORS 136.465. Defendant also relies on the notion that, in general, a definition of a term that appears in one area of the Oregon Revised Statutes does not necessarily control the term's meaning in another area. *See*, *e.g.*, *Enertrol Power Monitoring Corp v. State of Oregon*, 314 Or 78, 84, 836 P2d 123 (1992) (so stating);

8

*State ex rel Frohnmayer v. Oregon State Bar*, 307 Or 304, 308 n 2, 767 P2d 893 (1989) (same).[6]

Defendant may be correct that the 1971 adoption of a new definition of the term "crime" had no *direct* effect on the meaning of that term in ORS 136.465, which pertains to criminal procedure. However, he is less persuasive when confronting the effects of the 1973 enactment of the Oregon Criminal Procedure Code. Or Laws 1973, ch 836, §§ 1-359. Although the 1973 procedural code did not modify the words of ORS 136.465 in any significant way,[7] it is clear from the legislative history of the 1973 code that the drafters intended to import into that code the 1971 Criminal Code definitions of "crime," "offense," and "violation."

The 1973 Criminal Procedure Code and the 1971 Criminal Code were closely linked. Both codes were drafted by the Oregon Criminal Law Revision Commission, which the 1967 legislature created for the purpose of "prepar[ing] a revision

---

[6] Defendant also cites a provision in the 1971 revision through which the legislature disavowed an intent to affect statutes governing criminal procedure:

"Except as otherwise expressly provided, the procedure governing the accusation, prosecution, conviction and punishment of offenders and offenses is not regulated by this act but by the criminal procedure statutes."

Or Laws 1971, ch 743, § 6(1). That provision, however, is directed at the procedures themselves, not the meaning of words common to both substantive and procedural statutes. That provision has no application here.

[7] The 1973 statute made a single modification to ORS 136.465 (then codified as ORS 136.660): the term "accusatory instrument" was substituted for the original term "indictment." Or Laws 1973, ch 836, § 244.

of the criminal laws of this state, including but not limited to necessary substantive and topical revisions of the law of crime and of criminal procedure, sentencing, parole and probation of offenders, and treatment of habitual criminals." Or Laws 1967, ch 573, §§ 1, 2. The commission undertook that charge by first revising the substantive criminal laws and "defer[ring] work on a procedural code until completion of [that] phase of the project." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, Foreword, XXIV (1970). As soon as the commission completed its work on the substantive code in 1970 and the legislature enacted that code in 1971, the commission turned to the criminal procedural code revision. Thus, the commission's work on the procedural code was an extension of its recently completed effort on the substantive code.

As the commission considered additions and amendments to the procedural statutes, it applied the definitions that it had drafted, and that the legislature had adopted, in the 1971 Criminal Code.[8] For example, when the commission considered certain procedural statutes pertaining to arrest, it decided to change the word "crime" to

---

[8] The commission was composed largely of sitting legislators and was charged by the legislature with revising Oregon's criminal statutes. In numerous cases, we have looked to the minutes of its deliberations as well as its published commentary on the revised code as an authoritative source of legislative history for the 1973 Criminal Procedure Code. *See*, *e.g.*, *State v. Conger*, 319 Or 484, 493 n 4, 878 P2d 1089 (1994) (considering commentary to code); *State v. Hitt*, 305 Or 458, 462, 753 P2d 415 (1988) (considering both minutes of commission meetings and official commentary to criminal procedure code); *State v. Dyson*, 292 Or 26, 33-34, 636 P2d 961 (1981) (same); *State v. Mendacino*, 288 Or 231, 236 n 4, 603 P2d 1376 (1980) (relying on minutes of commission meetings).

10

"offense" in a number of the statutes to make it clear that a person could be arrested (or criminally cited in lieu of arrest) for violations as well as misdemeanors and felonies. Minutes, Criminal Law Revision Commission, July 24, 1972, 34-36, 40. In the course of the same discussions, a member of the commission suggested that the use of the word "crime" in ORS 133.225, pertaining to the authority of private persons to make citizen's arrests, "was intentional and it should not be changed to 'offense.'" *Id*. at 40. In at least one of the commission's discussions of the arrest statutes, the 1971 Criminal Code was explicitly acknowledged as the source of the relevant definitions of the term "crime." Minutes, Criminal Law Revision Commission, Subcommittee No. 1, June 9, 1972, 2. The commission had similar discussions about whether to use "offense" or "crime" with respect to the statutes governing stops by police officers[9] and the statutes governing arraignment and demurrers.[10]

During those discussions, the commission considered whether, and how, to change the original (1864) wording of ORS 136.465 (then numbered ORS 136.660). After a brief consideration of that statute, the commission produced an amended version that nonetheless continued to use the term "crime."[11] Although the commission did not

---

[9]     Minutes, Criminal Law Revision Commission, January 28, 1972, 16.

[10]     Minutes, Criminal Law Revision Commission, August 28, 1972, 39.

[11]     Minutes, Criminal Law Revision Commission, August 28, 1972, 27. The minutes indicate that the only comment made with respect to the statute, and two others that were grouped with it, was that the amendments "were all housekeeping in nature."

11

specifically discuss whether to keep or modify the term "crime" in the lesser-included offense statute, the context of its discussions makes clear that the commission understood, in leaving it, that the term would carry the meaning given to it in the 1971 Criminal Code. Generally, the legislative history indicates that the commission and, later, the legislature, intended the term "crime," including when it was used in ORS 136.465, to have the meaning that it was given in the 1971 Criminal Code through the definition in ORS 161.515.

We conclude that the jury's authority, described in ORS 136.465, to find a defendant guilty of "any *crime* the commission of which is necessarily included in that with which the defendant is charged," extends only to a crime as that term is defined in ORS 161.515 -- an offense "for which a sentence of imprisonment is authorized," *i.e.*, felonies and misdemeanors. The offense for which defendant sought lesser-included treatment -- careless driving -- is not a "crime" within the meaning of that definition. It follows that the trial court did not err in denying defendant's request for a jury instruction on careless driving as an offense necessarily included in the crime charged, and that the Court of Appeals did not err in affirming the trial court's denial.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

12