Argued and submitted March 7, certified questions answered
September 22, 2022

E. J. T.,
a minor, by and through his Conservator,
InTRUSTment, Northwest, Inc.,
*Plaintiff,*

*v.*

JEFFERSON COUNTY,
a public body;
Tyler W. Anderson, in his individual capacity;
and Arjang Aryanfard, in his individual capacity,
*Defendants.*

(United States District Court
for the District of Oregon
No. 320CV1990JR); (SC S068846)

518 P3d 568

Plaintiff brought an action against defendant Jefferson County and others in the United States District Court for the District of Oregon after he suffered catastrophic brain damage at the hands of his mother's boyfriend. Plaintiff alleged that he had suffered abuse from the boyfriend before, that medical personnel had reported those injuries to defendants, and that defendants had failed to take certain actions required by ORS 419B.005 to 419B.055, Oregon's child-abuse-reporting statutes. Plaintiff also alleged a claim under Oregon's Vulnerable Person Act, ORS 124.100 to 124.140, which creates a statutory private right of action for enhanced damages in certain circumstances. The district court certified two questions to this court: (1) "Is a claim for Abuse of a Vulnerable Person under ORS § 124.100 *et seq.*, available against public bodies?"; and (2) "Can a violation of Oregon's mandatory child abuse reporting law serve as a basis for statutory liability?" This court reframed the second question to reflect the nature of "statutory liability" in Oregon and limited its inquiry to the legislature's intent with respect to the statutory duties at issue. This court also declined to reach new arguments about whether separate, common-law claims might be available to plaintiff. *Held*: (1) A claim under Oregon's Vulnerable Person Act is available against a public body, through the Oregon Tort Claims Act, when the claim is based on the acts or omissions of officers, employees, or agents of the public body acting within the scope of their employment or duties; and (2) the legislature did not intend to create a statutory private right of action to address violations of the duties that the child-abuse-reporting statutes plausibly imposed on these defendants—duties that govern the law enforcement response to an existing report of child abuse.

The certified questions are answered.

En Banc

On certified question from the United States District Court for the District of Oregon; certified order dated August 27, 2021, certification accepted October 14, 2021.

Erin K. Olson, Law Office of Erin Olson, PC, Portland, argued the cause and filed the briefs for plaintiff.

Robert E. Franz, Jr., Law Office of Robert Franz, Jr., Springfield, argued the cause and filed the brief for defendants Jefferson County and Tyler W. Anderson.

Jonathan Henderson, Davis Rothwell Earle & Xóchihua, P.C., Portland, argued the cause and filed the brief for defendant Arjang Aryanfard. Also on the brief were Daniel Hasson and William G. Earle.

Ashley L. Vaughn, Dumas & Vaughn, LLC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Jane Paulson, Paulson Coletti Trial Attorneys, Portland, filed the brief for *amicus curiae* National Center for Victims of Crime. Also on the brief was Laura E. Laughlin, Freiwald Law, PC, Philadelphia, Pennsylvania.

FLYNN, J.

The certified questions are answered.

**FLYNN, J.**

This case reaches us on two certified questions from the United States District Court for the District of Oregon. Plaintiff, through a conservator, brought this action in the district court after he suffered catastrophic brain damage at the hands of his mother's boyfriend. Plaintiff alleged that those injuries were caused by the failure of defendants—Jefferson County, Jefferson County Deputy Sheriff Anderson, and Warm Springs Police Department Officer Aryanfard—to respond to an earlier report of child abuse in the manner that Oregon law requires. Specifically, plaintiff alleged that he had suffered abuse from the boyfriend a month earlier, that medical personnel had reported those injuries to defendants, and that defendants had negligently failed to take certain actions required by Oregon statutes that govern the reporting of child abuse, ORS 419B.005 - 419B.055. Plaintiff also alleged a claim under Oregon's Vulnerable Person Act, ORS 124.100 - 124.140, which creates a statutory private right of action for enhanced damages against a person who has caused, or "permitt[ed] another person to engage in," financial or physical abuse of a vulnerable person.[1] Before any litigation of plaintiff's factual allegations, the parties identified two unresolved questions about the meaning of the Oregon statutes on which plaintiff had based his claims, and the district court certified two questions to this court: "Is a claim for Abuse of a Vulnerable Person under ORS § 124.100 *et seq.*, available against public bodies?"; and "Can a violation of Oregon's mandatory child abuse reporting law serve as a basis for statutory liability?"

We accepted the questions under ORS 28.200, and we now answer those questions in part. With respect to Oregon's Vulnerable Person Act, we conclude that a claim under that act is available against a public body, through the Oregon Tort Claims Act (OTCA), when the claim is

---

[1] As we recently explained, "ORS 124.100 provides for, among other things, increased damages and attorney fees for prevailing plaintiffs who qualify as a 'vulnerable person' under the statute and brings an action against those who commit physical or financial abuse against the person or those who permit another person to do so." *Sherman v. Dept. of Human Services*, 368 Or 403, 406 n 1, 492 P3d 31 (2021). Although the legislature did not specify a short title for the statutes set out at ORS 124.100 to 124.140, *Sherman* refers to the statutes as "Oregon's Vulnerable Person Act," 368 Or at 406, and we use that title as well.

based on the acts or omissions of officers, employees, or agents of the public body acting within the scope of their employment or duties. With respect to "statutory liability," we slightly reframe the question that the district court has certified to reflect the nature of "statutory liability" in Oregon: We ask whether the legislature intended to create statutory liability, *i.e.*, a statutory private right of action, to address violations of a duty that the child-abuse-reporting statutes imposed on defendants. *See Deckard v. Bunch*, 358 Or 754, 759-60, 370 P3d 478 (2016) (describing the threshold requirements of a claim for statutory liability). And we conclude that the legislature did not intend to create a statutory private right of action to address violations of the duties that the child-abuse-reporting statutes plausibly may have imposed on defendants in this case: duties that apply to law enforcement agencies that have received, and personnel who are investigating, an existing report of child abuse.

## I.   FACTS

Plaintiff was two years old when he suffered permanent catastrophic brain damage after an assault by his mother's live-in boyfriend, Mendoza.[2] Plaintiff lived with his mother and Mendoza in the town of Madras, in Jefferson County, Oregon, and his mother occasionally left plaintiff in Mendoza's care. Plaintiff also spent time with his father, who was a member of the Confederated Tribes of Warm Springs. A month and a half before the assault that caused plaintiff's catastrophic brain damage, plaintiff's mother had taken him to the hospital in Madras with bruising around his genitals. The attending nurse had reported the injury as suspected child abuse to local Jefferson County law enforcement and, later, to the Warm Springs Police Department.

Anderson responded to that report of abuse on behalf of the Jefferson County Sheriff. Before arriving at the hospital, Anderson notified dispatch that he had spoken by phone to the nurse and had been told that plaintiff had been abused two days earlier while staying at his father's home. At the hospital, Anderson asked plaintiff's

---

[2] Because the certified questions present issues of law that reach us prior to any litigation of the facts, we take the relevant facts from the allegations in the complaint.

mother where plaintiff's father lived, and, upon learning that he lived on the Warm Springs reservation, Anderson told plaintiff's mother that he had no jurisdiction and left the hospital without taking any other investigatory steps and without notifying the Department of Human Services (DHS) that the sheriff's office had received a report of child abuse. Anderson reported to dispatch that the abuse had occurred in Warm Springs and that "[d]ispatch is giving the call to them."

Aryanfard responded to the nurse's report on behalf of the Warm Springs Police Department. He interviewed plaintiff's mother briefly over the phone and advised her that he had spoken with plaintiff's father. At the Warm Springs Police Department, Aryanfard took photographs of plaintiff and spoke again with plaintiff's mother. He promised plaintiff's mother that he would figure out what had happened, but Aryanfard did nothing more to investigate the abuse. He did not continue the investigation or write any report, and he did not notify DHS that his police department had received a report of child abuse.

Over the next month and a half, plaintiff's mother continued to leave plaintiff in Mendoza's care. Ultimately, Mendoza assaulted plaintiff, causing the serious physical injuries that are at issue in this case, including a traumatic brain injury resulting in permanent catastrophic brain damage.[3]

After plaintiff filed his complaint in federal district court, Jefferson County and Anderson (the Jefferson County defendants) moved to dismiss under FRCP 12(b)(6) for failure to state a claim. With respect to the claim alleging violations of Oregon's Vulnerable Person Act, ORS 124.105, the Jefferson County defendants recognized that the legislature had created a civil cause of action to enforce those laws, but they contended that the OTCA precludes such a claim against a public body or its employees. With respect to the claim alleging violations of the child-abuse-reporting statutes, the Jefferson County defendants argued in part that

---

[3] Mendoza was charged with multiple counts relating to both assaults against plaintiff. Pursuant to a plea agreement, he pleaded no contest to attempted aggravated murder and first-degree criminal mistreatment.

the legislature had not created a civil cause of action for
violation of those statutory duties. In opposing the motion,
plaintiff confirmed defendant's understanding that the com-
plaint was alleging a claim for statutory liability based on
violations of the child-abuse-reporting statutes. Plaintiff
argued that the Jefferson County defendants' motion had
identified two unsettled questions of Oregon law and that
the district court should consider certifying those questions
to this court. The district court granted the request for cer-
tification, and it denied the motion to dismiss without preju-
dice, pending this court's response to the certified questions.
This court accepted certification.

## II.   DISCUSSION

### A.   *Claim for Abuse of a Vulnerable Person Against a Public Body*

The second certified question—which we answer
first—asks whether a claim for abuse of a vulnerable person
under ORS 124.100 to 124.140 is available against public
bodies. We conclude that the claim is available under the
circumstances that plaintiff has alleged: A claim that offi-
cers, employees, or agents of a public body violated Oregon's
Vulnerable Person Act while "acting within the scope of
their employment or duties" is a tort claim, for which the
OTCA authorizes an action against the public body.

In this case, plaintiff alleges that defendants are
liable under Oregon's Vulnerable Person Act because they
permitted another person—Mendoza—to engage in physi-
cal abuse of plaintiff.[4] There is no dispute that the legis-
lature has created a statutory private right of action for a
vulnerable person injured under those circumstances. *See*
ORS 124.100(2) (specifying that "[a] vulnerable person who
suffers injury, damage or death by reason of physical abuse
or financial abuse may bring an action against any person
who has caused the physical or financial abuse or who has
permitted another person to engage in physical or financial
abuse").

---

[4] We assume for purposes of answering the certified question that the alleged
facts amount to "permit[ing] abuse" of a "vulnerable person" within the meaning
of Oregon's Vulnerable Person Act, but we express no opinion as to that matter.

The Jefferson County defendants argue, however, that the OTCA—specifically the "exclusive remedy" provision of the OTCA—precludes plaintiff from pursuing his Oregon's Vulnerable Person Act claim against a public body or its employees.[5] They rely on ORS 30.265(2), which specifies that an action under the OTCA is "[t]he sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties" and that the remedy of an action under the OTCA "is exclusive of any other action against any such officer, employee or agent." And they insist that "on four separate occasions, the federal court in the District of Oregon has held that an action based upon ORS 124.100 cannot be brought against an Oregon public body and its employees."

Plaintiff responds that a claim for abuse of a vulnerable person is a tort claim that may be brought against a public body *through* the OTCA when the claim is based on the actions of a public body's officers, employees, or agents acting within the scope of their employment or duties. Plaintiff's argument reflects a better understanding of the OTCA.

Through the OTCA, the legislature has "waive[d] the immunity to which public bodies are otherwise entitled and ma[de] 'every public body *** subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties.'" *Sherman v. Dept. of Human Services*, 368 Or 403, 406, 492 P3d 31 (2021) (quoting ORS 30.265(1) (omission in *Sherman*)). The waiver is not limited to only those claims that would have been barred at common law by sovereign immunity. *See Comcast of Oregon II, Inc. v. City of Eugene*, 346 Or 238, 248, 209 P3d 800 (2009). Instead, the OTCA waives immunity for claims in "tort," as the OTCA uses that term. *Id.* (citing ORS 30.260(8)). And, as we explain below, plaintiff's claim for abuse of a vulnerable person is a "tort" subject to the OTCA.

---

[5] Defendant Aryanfard did not join in the motion to dismiss that the Jefferson County defendants filed, and his briefing in this court takes no position on whether Oregon's Vulnerable Person Act claim is available against a public body.

The role of the "exclusive remedy" provision is to ensure that a tort claim against a public body is subject to the limitations that the legislature has attached to the waiver of immunity. *See Sherman*, 368 Or at 406 (explaining that the "OTCA waives the immunity to which public bodies are otherwise entitled," but, "[i]n doing so, the OTCA also provides limitations on tort actions against public bodies" that would not apply if the same claim were brought against a private defendant); ORS 30.265(1) (specifying that "every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties" but that the action is "[s]ubject to the limitations" of the OTCA).

For purposes of the OTCA, a "tort" is "the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy." ORS 30.260(8). And we have previously concluded that, when the legislature has provided a statutory cause of action for breach of a statutory duty, the claim can be a "tort" within the meaning of the OTCA. *Griffin v. Tri-Met*, 318 Or 500, 506-07, 870 P2d 808 (1994). In *Griffin*, we held that the plaintiff's statutory claim against a public-body employer for engaging in an unlawful employment practice was a "tort" within the meaning of the OTCA and "subject to the provisions of the OTCA." *Id.* at 507. We emphasized that the claim was based on the employer's breach of a statutory duty to make reasonable accommodations, thus a "'legal duty that is imposed by law, other than a duty arising from contract or quasi-contract,'" and that the legislature had provided a civil right of action for damages for that breach of duty. *Id.* (quoting ORS 30.260(8)). As a result, we concluded that the liability limit that the OTCA imposes on tort claims against a public body applied to limit the amount of attorney fees to which the plaintiff otherwise would have been entitled under the statute that created the cause of action. *Id.* at 515; *see also Urban Renewal Agency v. Lackey*, 275 Or 35, 38, 549 P2d 657 (1976) (concluding that a claim against state urban renewal agency for damages due to breach of a statutory duty to assist relocated businesses

was a "tort," so subject to the notice requirement of the OTCA).

For similar reasons, we conclude that the statutory cause of action that the legislature has provided for abuse of a vulnerable person is a "tort" within the meaning of the OTCA. As set out above, plaintiff's claim under Oregon's Vulnerable Person Act is one for which the legislature has provided a civil right of action for damages to a person who is injured by a breach of one of the legal duties specified in the act. 370 Or at 220 (describing ORS 124.100 to 124.140). Those duties do not arise from contract or quasi-contract. *See Griffin*, 318 Or at 506-07 (describing statutory duty as arising from other than "contract or quasi-contract"). Thus, an Oregon's Vulnerable Person Act claim is a "tort" within the meaning of the OTCA. *See* ORS 30.260(8) (defining "tort"). And, when the plaintiff alleges that officers, employees, or agents of a public body committed that "tort" within the scope of their employment, the action is subject to the OTCA, and the public body is a proper defendant. *See* ORS 30.265(2) (describing circumstances under which the plaintiff's "sole cause of action for a tort *** is an action under" the OTCA); ORS 30.265(3), (4) (providing that in an OTCA action "for a tort committed by" an employee, if the action alleges damages at or below the damages caps, the public body is the defendant, and if the action alleges higher damages, the employee may be a defendant, "whether or not the public body is also named as a defendant").

We briefly turn to, and reject, one additional argument that the Jefferson County defendants have raised in this court: that plaintiff cannot bring his Oregon's Vulnerable Person Act claim under the OTCA because the OTCA's limitations are in "direct conflict" with the cause of action that the legislature has created under Oregon's Vulnerable Person Act. Assuming the validity of the premise, the conclusion is not sound. When a tort claim falls within the scope of the OTCA, then it is controlled by the limitations that the OTCA imposes on tort actions against a public body, even if the same action against a private party would not be subject to those limitations. *See Sherman*, 368 Or at 406 (OTCA "provides limitations on tort actions

against public bodies" that would not apply in an action against a private defendant); *see also Griffin*, 318 Or at 507, 515 (for unlawful employment practice claim subject to the OTCA, statutory attorney fees were limited by the OTCA's liability limit).

That analysis resolves the certified question regarding Oregon's Vulnerable Person Act: The private right of action that the legislature has created for causing or permitting the abuse of a vulnerable person is a tort for which a public body may be named as a defendant, under the OTCA, when the complaint alleges that an officer, employee, or agent of the public body committed that tort while acting within the scope of the person's employment or duties.[6]

B.  *Statutory Liability for Violation of Child-Abuse-Reporting Statutes*

We turn to the remaining certified question, which asks whether statutory liability can be based on a violation of Oregon's mandatory child-abuse-reporting statutes. As explained above, we have reframed the court's certified question to ask whether the legislature intended to create a statutory private right of action to address violations of a duty that Oregon's mandatory child-abuse-reporting statutes imposed on defendants. 370 Or at 218. We have reframed the question in that way because statutory liability is a legislative creation; "[s]tatutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty," *i.e.*, a statutory claim "that exists independently of" any claim for

---

[6] The Jefferson County defendants have raised several additional arguments in this court, including that a public body cannot be liable for the tort of abuse of a vulnerable person because only a "person" can be liable under the terms of Oregon's Vulnerable Person Act. *See* ORS 124.100(2) (authorizing "an action against any *person* who has caused *** [or] permitted another person to engage in physical or financial abuse" (emphasis added)). Plaintiff has not alleged, however, that Jefferson County directly violated Oregon's Vulnerable Person Act; he has alleged that Anderson committed the tort of abuse of a vulnerable person while "acting within the course and scope of his employment as a Deputy Sheriff" for Jefferson County. As we have explained, under those circumstances, the public-body employer is liable—through the OTCA—for the tort of its employee. 370 Or at 221. Because Anderson is undeniably a "person" capable of committing the tort, we decline to consider whether a public body could be a "person" within the meaning of Oregon's Vulnerable Person Act. We reject the Jefferson County defendants' remaining arguments without written discussion.

common-law negligence that might also exist. *Deckard*, 358 Or at 757, 759 (internal quotation marks omitted). A claim for statutory liability requires the plaintiff to establish that

> "(1) a statute imposed a duty on the defendant; (2) the legislature expressly or impliedly intended to create a private right of action for violation of the duty; (3) the defendant violated the duty; (4) the plaintiff is a member of the group that the legislature intended to protect by imposing the duty; and (5) the plaintiff suffered an injury that the legislature intended to prevent by creating the duty."

*Id.* at 759-60. In other words, whether violation of a statutory duty supplies a basis for statutory liability turns on legislative intent. *Doyle v. City of Medford*, 356 Or 336, 344-45, 367, 337 P3d 797 (2014).

Here, we understand the certified question to put at issue primarily the first two steps that *Deckard* describes for establishing statutory liability: (1) whether the child-abuse-reporting statutes imposed a duty on defendants; and (2) whether "the legislature expressly or impliedly intended to create a private right of action" for violations of a duty imposed on defendants. *See* 358 Or at 759-60. We conclude that some of the duties imposed under the child-abuse-reporting statutes plausibly apply to defendants but that the legislature did not intend to create a statutory private right of action to enforce violations of those duties.

1.    *Whether the legislature imposed a duty on defendants*

The "threshold inquiry" in our analysis of statutory liability is whether the mandatory child-abuse-reporting laws imposed a duty on defendants under the circumstances alleged in the complaint. *See Deckard*, 358 Or at 765 (describing "threshold inquiry"). The statutes set out at ORS 419B.005 to 419B.055 "seek to ensure" that the state will be able "to identify children who are affected by abuse or neglect and potentially in need" of state services.[7] *See Querbach v. Dept. of Human Services*, 369 Or 786, 789,

---

[7] Several of the statutes in ORS 419B.005 to 419B.055 have been amended since the events giving rise to plaintiff's claim, including the addition of new subparagraphs. Because the amendments do not affect our analysis, our citations and quotations are to the current versions of the statutes, but only to the extent that the quotations and citations are identical to the 2017 versions of the statutes.

512 P3d 432 (2022) (discussing the statutory scheme). ORS 419B.007 announces a legislative policy that it is "necessary and in the public interest to require mandatory reports and investigations of abuse of children" in order to "facilitat[e] the use of protective social services to prevent further abuse, safeguard and enhance the welfare of abused children, and preserve family life when consistent with the protection of the child."

To give effect to that policy, the child-abuse-reporting statutes impose a variety of duties that are determined in part by the circumstances under which a person becomes aware of child abuse. For example, "[a]ny public or private official" who has "reasonable cause to believe that any child with whom the official comes in contact has suffered abuse" must "immediately report or cause a report to be made" to law enforcement or to DHS. ORS 419B.010(1); *see* ORS 419B.005(6) (listing the individuals defined as a "[p]ublic or private official"); ORS 419B.015 (describing the required report). Other provisions of the reporting statutes impose duties on law enforcement and DHS upon receiving a report of child abuse, including specific duties with respect to initiating, conducting, and concluding an investigation. *See* ORS 419B.020(1)(a) (imposing duty on DHS or law enforcement agency receiving report to "[c]ause an investigation to be made to determine the nature and cause of the abuse of the child"); ORS 419B.023 (requiring "a person conducting an investigation" to take specific steps); ORS 419B.026 (requiring investigations to result in a finding with respect to whether the report of child abuse is "founded").

The need to identify the pertinent duties is particularly critical to evaluating legislative intent in this case because the group of statutes that we refer to collectively as the "child-abuse-reporting statutes," ORS 419B.005 to 419B.055, are the product of numerous legislative enactments over the course of six decades. *See, e.g.*, Or Laws 1965, ch 472, § 5 (immunizing good-faith actions to fulfill a preexisting statutory duty imposed on physicians to report suspicious injuries to children to a medical examiner); Or Laws 1971, ch 451 (setting out a child-abuse-reporting scheme, codified at ORS chapter 418); Or Laws 1993, ch 546 § 11 (recodifying the child-abuse-reporting scheme at ORS

chapter 419B); Or Laws 2007, ch 674 §§ 3, 5 (imposing specific duties on "a person conducting an investigation"). When we later turn to whether the legislature intended to create a private right of action to address violations of one of the statutory duties, that inquiry will be particularly informed by "the intent of the legislature that enacted" the statutory duty at issue. *See State v. Swanson*, 351 Or 286, 290, 266 P3d 45 (2011) (describing proper focus of legislative intent inquiry).

Here, plaintiff's complaint alleges violations of two statutes that impose duties on "a law enforcement agency" and two that impose a duty on "a person" investigating a child abuse report: failing to notify DHS that the law enforcement agency has received a report of abuse, as required by ORS 419B.015(1)(b); failing to "[c]ause an investigation to be made to determine the nature and cause of the abuse," as required by ORS 419B.020(1)(a); failing to ensure that "a designated medical professional" conduct an assessment of plaintiff within 48 hours, as required by ORS 419B.023(2); and failing to cause photographs of plaintiff's injuries to be sent to a "designated medical professional," as required by ORS 419B.028.[8]

Each of the cited statutes identifies an action that the agency or person "shall" take. ORS 419B.015(1)(b) (specifying that, when a law enforcement agency receives a report of child abuse, "the agency shall notify" DHS); ORS 419B.020(1)(a) (specifying that, if "a law enforcement agency receives a report of child abuse, * * * the agency shall immediately * * * [c]ause an investigation to be made to determine the nature and cause of the abuse"); ORS 419B.023(2) (specifying that, "[i]f a person conducting an investigation under ORS 419B.020 observes a child who has suffered suspicious physical injury" and has at least "a reasonable suspicion that the injury is or may be the result of abuse, the person

---

[8] The same statutes currently impose parallel duties on DHS and its personnel, but the DHS duties are the product of different enactment histories. *See, e.g.*, Or Laws 1975, ch 644, §§ 6, 8 (making DHS predecessor a proper recipient of mandatory child abuse reports and imposing a duty on the agency to investigate reports). In discussing legislative intent with respect to the relevant duties, we limit our inquiry to the enactment of the duties that statutes impose on law enforcement agencies and personnel.

shall *** [e]nsure that a designated medical professional" conducts an assessment of the child within 48 hours); ORS 419B.028(2)(a) (specifying that when a child has been photographed, the person "causing to have the photographs taken shall, within 48 hours or by the end of the next regular business day" provide copies to the "designated medical professional"). Thus, we readily conclude that the child-abuse-reporting laws on which plaintiff relies impose mandatory duties on law enforcement agencies and personnel that at least plausibly apply to defendants in this case.[9] *See Scovill v. City of Astoria*, 324 Or 159, 167 n 7, 921 P2d 1312 (1996) ("'Shall' in a statute ordinarily is mandatory.").

Plaintiff also points to the duty that the reporting laws impose on a lengthy list of "public and private officials" to make a report of child abuse—to DHS or a law enforcement agency—when the individual has "reasonable cause to believe that any child with whom the official comes in contact has suffered abuse or that any person with whom the official comes in contact has abused a child." *See* ORS 419B.010(1) (imposing duty to "immediately report or cause a report to be made"); ORS 419B.015(1)(a) (specifying that the report must be made "to the local office of [DHS], to the designee of the department or to a law enforcement agency within the county where the person making the report is located at the time of the contact"); ORS 419B.005(6)(a)-(ii) (listing individuals who are "public and private officials"). Indeed, most of the parties' arguments center on that duty to make a report of child abuse to DHS or law enforcement. But plaintiff has not alleged that defendants violated the reporting duty imposed by ORS 419B.010(1), and it appears that the duty to *make* a report would not apply under the facts of this case. *See* ORS 419B.010(2) (specifying that a report under ORS 419B.010(1) "need not be made" if the person "acquires information relating to abuse by reason of a report made

---

[9] We understand that Aryanfard disputes whether the duties under the child-abuse-reporting statutes even apply to tribal police officers. For purposes of resolving the certified question, however, it is enough that the duties that the child-abuse-reporting statutes impose on law enforcement personnel plausibly applied to defendants. *See Deckard*, 358 Or at 766 (reasoning that the court did not need to resolve definitively whether the statute imposed a duty on the defendants where it ultimately concluded that the legislature did not intend to create a private right of action).

under this section, or by reason of a proceeding arising out of a report made under this section," if that person "reasonably believes that the information is already known by a law enforcement agency or [DHS]"). Thus, given the facts that plaintiff has alleged, we answer the first inquiry in *Deckard* by concluding that the child-abuse-reporting statutes plausibly imposed on defendants the duties that plaintiff has alleged—duties that govern the law enforcement response to an existing report of child abuse.

    2.   *Whether the legislature intended to create a statutory private right of action*

      Having identified the duties that the child-abuse-reporting statutes plausibly imposed on defendants in this case, we turn to the second *Deckard* inquiry: whether the legislature "expressly or impliedly intended to create a private right of action" for a violation of those duties. *Id.* at 760. Plaintiff recognizes that the child-abuse-reporting statutes do not expressly create a private right of action. But plaintiff argues that the legislature impliedly intended to create statutory liability to enforce violations of the child-abuse-reporting statutes. *See Deckard*, 358 Or at 760 (explaining that, "when a statute prescribing a duty does not expressly indicate whether the legislature intended to create statutory liability to enforce the duty, we consider whether such intent is implied"). Because the issue is one of legislative intent, we employ our usual framework for construing statutes. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing analytical framework). Under that framework, we examine the text and context of the particular provisions that are at issue and consider the legislative history of those provisions "where that legislative history appears useful to the court's analysis." *Id.*; *see also Deckard*, 358 Or at 760 (emphasizing that "the proper methodology for determining whether the legislature *** intended to create a right of action for enforcement of a statutory duty is the familiar holistic framework applicable to all statutory interpretation problems—careful examination of the statutory text, context, and legislative history").

      As plaintiff points out, the legislature has created numerous mandatory statutory duties for the purpose of

protecting children. But, as we have previously observed, "many statutory obligations are enacted without any legislative intent to confer a private right of action on a person who is harmed by a violation of the statute." *Doyle*, 356 Or at 367. Thus, "[t]he mere existence of a statutory duty alone does not furnish a shortcut through the analysis" of whether the legislature intended to create a statutory cause of action. *Id*. We must assess whether, beyond creating mandatory notification and investigatory duties, the legislature intended to "confer a private right of action on a person who is harmed" when those duties are violated. *See id*.

Plaintiff's arguments also rely heavily on an analogy to *Scovill*, 324 Or 159, which *Doyle* characterized as a case in which this court "discerned an implied legislative intent to create statutory liability" for violation of a statutory duty, in part based on the existence of an immunity provision related to that statutory duty. *See Doyle*, 356 Or at 366-67 (discussing *Scovill*, 324 Or at 168-69). In *Scovill*, a visibly intoxicated woman was struck and killed by an oncoming car after police officers allowed her to leave the police station and walk into the street. 324 Or at 162. On behalf of the woman's estate, the plaintiff alleged that the woman had died as a result of the police officer's violation of a statutory duty to take any intoxicated person to "an appropriate treatment facility" when they "have reasonable cause to believe the person is dangerous to self." *Scovill*, 324 Or at 162-63 (quoting *former* ORS 426.460(1) (1989), *renumbered as* ORS 430.399 (1995) (emphasis omitted)).

In considering whether the legislature had created statutory liability to enforce violations of that statutory duty, this court relied in part on context supplied by a related immunity provision, which specified that a police officer would not be "'held criminally or civilly liable for actions pursuant to [*former* ORS 426.460 (1989)], provided the actions are in good faith, on probable cause and without malice.'" *Scovill*, 324 Or at 162, 167-68 (quoting *former* ORS 426.470 (1989), *renumbered as* ORS 430.401 (1995) (emphasis omitted)). This court construed the immunity provision as suggesting that the legislature "contemplated" that a failure to perform the statutory duty could "give rise to a potential liability in tort in circumstances in which the limitations

stated [in the immunity provision] did not apply." *Id.* at 169. Then, in a portion of the opinion that we have subsequently characterized as dicta, we observed that "[p]ermitting a tort action in the circumstances alleged in this case is consistent with and serves to enforce the legislated duty imposed by [*former*] ORS 426.460(1) [(1989)], which does not specify other means for its enforcement." *Scovill*, 324 Or at 172; *see Doyle*, 356 Or at 361 (clarifying that, after concluding that the legislature intended to create a private right of action, "it was inappropriate" and "unnecessary" for the court to further analyze whether to recognize a common-law claim).

Plaintiff analogizes the child-abuse-reporting statutes to the statutes at issue in *Scovill*. He emphasizes that the child-abuse-reporting statutes also contain an immunity provision, ORS 419B.025, and that they provide no mechanism for enforcing the duties that those laws impose on responding law enforcement, *see* ORS 419B.010(5) (specifying that violation of the duty under ORS 419B.010(1) to *make* a report of child abuse is a Class A violation). But we are focused here on different statutes that were enacted by different legislative bodies than the statutes at issue in *Scovill*, and it is the intent of the legislatures that enacted the relevant child-abuse-reporting duties on which our inquiry must focus. *Swanson*, 351 Or at 290. Moreover, we have cautioned that, although this court's "earlier decisions" sometimes considered an immunity provision or the absence of an enforcement remedy to be "significant to the implied legislative intent inquiry, *** those factors are neither exclusive nor talismanic, and, in some instances *** they may not advance the analysis very far." *Deckard*, 358 Or at 760. Rather, as *Deckard* emphasizes, whether statutory liability exists is a question of statutory interpretation that this court must resolve using its "familiar holistic framework applicable to all statutory interpretation problems." *Id.*

*Deckard*'s application of that framework supplies helpful guidance because it represents this court's most recent examination of a statute for indications of an implied legislative intent to create a private right of action. In *Deckard*, this court considered whether the legislature intended to create a statutory private right of action when it enacted and then amended a statute that specified limited

conditions under which serving alcohol to visibly intoxicated guests or patrons could give rise to liability for damages caused by those guests or patrons. 358 Or at 756 (discussing *former* ORS 30.950 (1979), *amended by* Or Laws 1987, ch 774, § 13, *renumbered as* ORS 471.565 (2001)). In our analysis of the statutory text and context, we recognized that the statute contained an immunity provision, which suggested that the legislature had contemplated civil liability. *Id.* at 766. But we reasoned that "it is equally reasonable to infer that, when it referred to civil liability, the legislature meant to regulate [existing] common-law negligence actions, as it is reasonable to infer that the legislature meant to create an additional statutory right of action." *Id.* There, the existing civil liability was a common-law negligence claim "against alcohol providers for serving visibly intoxicated persons who then injure third parties in drunk driving accidents [that] already existed when the statute was enacted." *Id.* (citing *Campbell v. Carpenter*, 279 Or 237, 243-44, 566 P2d 893 (1977)).

We also considered whether we could draw any inference from the fact that the legislature had not provided an "express remedy" in the statutes to address violations of a statutory duty not to serve visibly intoxicated persons. *Id.* But we reasoned that the legislature's failure to provide an express remedy was "not particularly illuminating," given that the existing common-law claim provided some remedy to address the conduct identified in the statute. *Id.* at 766-67.

Ultimately, we concluded in *Deckard* that there was no indication in the text or context of the statute that implied a legislative intent to create a statutory private right of action that would exist independently of the common-law negligence claim for overserving alcohol. *Id.* at 767. And we found no indication in the legislative history that the legislature had intended to create "statutory liability that was different from common law liability" for overservice. *Id.* at 785. In fact, the legislative history demonstrated that the legislature's purpose had been to limit the circumstances under which alcohol providers could be liable in a common-law negligence claim. *Id.* at 787.

Although we consider different statutes in this case than the statute that we examined in *Deckard*, we are again asked to infer legislative intent from the existence of an immunity provision and limited enforcement mechanism. For reasons similar to those that we articulated in *Deckard*, we conclude that it does not "advance the analysis very far" to consider the inferences that potentially flow from the immunity and enforcement provisions in the child-abuse-reporting statutes. *See id.* at 760.

With respect to the immunity provision of the child-abuse-reporting statutes, the legislature has guaranteed immunity to "[a]nyone participating in good faith in the making of a report of child abuse and who has reasonable grounds for the making thereof \*\*\* with respect to the making or content of such report." ORS 419B.025. As in *Deckard*, the provision supports a premise that the legislature contemplated civil liability in relation to making a report of child abuse, but "it is equally reasonable to infer" from that premise "that, when it referred to civil liability, the legislature meant to regulate" existing civil liability—such as a defamation action by the alleged abuser—"as it is reasonable to infer that the legislature meant to create an additional statutory right of action." *Id.* at 766; *see, e.g.*, *Farnsworth v. Hyde*, 266 Or 236, 238, 512 P2d 1003 (1973) (defining "a defamatory communication as" including one that would "tend to diminish the esteem, respect, goodwill or confidence in which [a person] is held or to excite adverse, derogatory or unpleasant feelings or opinions against them" (internal quotation marks omitted)).

Moreover, any inference that might be drawn from the legislature's grant of immunity with respect to the *making* of a report of child abuse is particularly tenuous when the question is whether the legislature meant to create a statutory right of action for violating other duties that are not addressed in the immunity provision—the notification and investigatory duties that law enforcement agencies and personnel must satisfy in *response* to an existing report of child abuse. The statutory immunity has never applied to those notification and investigatory duties. ORS 419B.025; *see* Or Laws 1971, ch 451, §§ 3, 13 (enacting the "law

enforcement" duties at issue in this case and amending a preexisting immunity for "the making of a report" to apply also to the newly enacted "public or private official" reporting requirement, but not to the newly enacted law enforcement notification and investigatory duties).[10] So there is no basis on which to assume that the legislature contemplated statutory civil liability with respect to those duties. Thus, plaintiff's focus on the immunity provision in ORS 419B.025 does not advance the analysis in this case.

It is equally difficult to draw any meaningful inference about legislative intent from an examination of the enforcement mechanism that the legislature provided in the child-abuse-reporting statutes. Plaintiff and all defendants point to the fact that a violation of the duty to make a report under ORS 419B.010(1) currently is punishable as a "Class A violation," ORS 419B.010(5). The effect of that classification is that a violation of the duty to make a report is punishable by a fine of up to $2,000 and potentially by an award of monetary restitution to a victim who suffers damages as a result of the violation. *See* ORS 137.106 (authorizing a trial court to require a person who has been convicted of a crime or violation to pay a victim's economic damages that resulted from the crime or violation); ORS 153.018 (setting the maximum fine for a Class A violation committed by an individual).[11] Defendants argue that the existence of some enforcement mechanism points away from a legislative intent to create a statutory private right of action to provide an enforcement mechanism, and plaintiff argues that the limited nature of the enforcement mechanism points to the opposite legislative intent.

---

[10] The applicable immunity has been limited from its inception to "the making of a report" required by the child-abuse-reporting statutes. Or Laws 1971, ch 451, §§ 3, 13. Initially, the legislature accomplished that result by amending an immunity statute that already existed in a different chapter of the Oregon Revised Statutes. Or Laws 1971, ch 451, § 13. Later, the 1975 Legislative Assembly enacted a separate immunity provision for "the making of a report" required by the child-abuse-reporting statutes and added it to the chapter setting out the child-abuse-reporting statutes, ORS chapter 418. Or Laws 1975, ch 644, § 6.

[11] In 1971, violation of the duty of public and private officials to make a report of child abuse was punishable as a misdemeanor, Or Laws 1971, ch 451, § 8, but no party articulates a way in which the distinction between a misdemeanor and a violation should alter our understanding of whether the 1971 Legislative Assembly intended to create statutory liability for violation of the duties at issue in this case.

Neither inference is more plausible than the other, however. Among other possibilities, the legislature may have understood that existing common-law remedies made it unnecessary to create a statutory private right of action to address violations of the duties of responding law enforcement officials.[12] *See Deckard*, 358 Or at 760, 766-67 (explaining that, in determining whether a statute creates a private right of action, the significance of the legislature's failure to provide an express remedy for a violation of a duty can depend on how the legislature understood preexisting common-law remedies). In short, we know only that the legislature expressly provided for a penalty—but not statutory liability—to address violations of the duty *to make* a report of child abuse. But that bare fact tells us nothing about whether the legislature intended to create statutory liability to address violations of the duties that govern the *response* of law enforcement agencies and personnel to an existing report of child abuse.

Beyond pointing to the immunity and penalty provisions, which do not advance the analysis in this case, plaintiff identifies nothing in the child-abuse-reporting statutes to persuade us that the legislature intended to create a new statutory right of action that would exist independently of whatever common-law claim the court might recognize. And we have found nothing in the text or context of those provisions to suggest that the legislature impliedly intended to create a statutory private right of action to enforce the notification and investigatory duties that govern law enforcement's response to an existing report of child abuse.

In the absence of a textual, or contextual, indication that the legislature impliedly intended to create a statutory

---

[12] Although this court has never directly addressed whether a common-law negligence claim would provide recovery for a breach of the duties at issue in this case, the 1971 Legislative Assembly, or at least the 2007 Legislative Assembly, might have assumed that a common-law negligence claim would be available under those circumstances. *See, e.g.*, *Mezyk v. National Repossessions*, 241 Or 333, 337, 405 P2d 840 (1965) (recognizing a negligence claim for harm caused by third-party when the defendant negligently created a likelihood of that harm); *Blachly v. Portland Police Dept.*, 135 Or App 109, 117, 898 P2d 784 (1995) (holding that the plaintiffs stated a common-law negligence claim against DHS's predecessor based on allegations that the agency failed to investigate a report that children—including the plaintiffs—were being abused at a day care facility).

private right of action to address violations of the cross-reporting and investigatory duties, we might still be persuaded that the legislature intended to create a statutory private right of action if the legislative history revealed at least some discussion of that possibility. But, as we explain below, there is no helpful legislative history. *See Gaines*, 346 Or at 171-72 (explaining that, in the construction of a statute, we will consider legislative history "where that legislative history appears useful to the court's analysis").

Plaintiff and defendant Aryanfard both point to legislative events in 1999 as supplying a relevant indication of legislative intent. Their reliance on those events is misplaced. In 1999, the legislature considered and ultimately adopted a bill that would have amended ORS 419B.010 to specify that a violation of the statutory duty to report child abuse "does not give rise to a private right of action." HB 2226, § 2(3) (1999). The amendment was supported by the Oregon State Bar Professional Liability Fund, which explained in testimony to the Senate Judiciary Committee that two Oregon trial courts had relied on *Scovill* to conclude that the legislature had impliedly intended to create a private right of action when it created the statutory duty to report abuse. Senate Committee on Judiciary, HB 2226, May 10, 1999, Ex. P (statement of Kirk R. Hall). But the bill did not become law because Governor Kitzhaber vetoed it. In doing so, he submitted a written statement explaining that he was concerned in part that "removing the possibility of a private cause of action" was not in the best interest of Oregon children. Letter to Secretary of State Phil Keisling from Governor John Kitzhaber, Sept 3, 1999.

The parties urge us to draw competing inferences from that historical context, but neither is consistent with how this court determines legislative intent. In determining legislative intent, our primary focus is on "the intent of the legislature that enacted the statute" as well as on "any later amendments or statutory changes that were intended by the legislature to modify or otherwise alter the meaning of the original terms of the statute." *Swanson*, 351 Or at 290. Here, that focus is on the 1971 Legislative Assembly, which enacted the earliest of the duties applicable to a responding

"law enforcement agency" as part of the first comprehensive statutory scheme to address mandatory child abuse reporting and investigation, and on the 2007 Legislative Assembly, which enacted the duties applicable to "a person conducting an investigation" into a report of child abuse.[13] Or Laws 1971, ch 451, § 5; Or Laws 2007, ch 674, §§ 3, 5.

The 1999 effort that failed to "modify or otherwise alter the meaning of the original terms of the statute" is irrelevant to our effort to determine legislative intent. *See Swanson*, 351 Or at 290. We cannot assume that any intent of the 1999 Legislative Assembly was shared by the 1971 or 2007 Legislative Assemblies. And we cannot assume that the failure of subsequent legislatures to pass a new version of the vetoed bill indicates an endorsement of the position expressed by the governor's veto, or of the trial court decisions that prompted the 1999 Legislative Assembly to act. *See State ex rel Rosenblum v. Nisley*, 367 Or 78, 87, 473 P3d 46 (2020) (observing that "we have repeatedly emphasized" that "'negative inferences' from the legislature's failure to amend a statute 'are often unhelpful in statutory interpretation,' because 'legislative inaction can stem from a variety of causes, which may or may not relate to the legislature's intent as to a particular issue'" (quoting *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 129, 379 P3d 462 (2016))).

Focusing as we must on the intent of the 1971 Legislative Assembly and the 2007 Legislative Assembly, which enacted the relevant law enforcement duties, nothing in the legislative history supports plaintiff's contention that the legislature intended to create a new private right of action

---

[13] Between the time of enactment and the time of the events giving rise to the present action, the statutes describing the relevant duties had been periodically amended in minor ways that do not modify the originally enacted duties in any way that is meaningful to our analysis. *See, e.g.*, Or Laws 1975, ch 644, § 8 (amending *former* ORS 418.760 (1971), *repealed by* Or Laws 1993, ch 546, § 141); Or Laws 2005, ch 250, § 1 (amending ORS 419B.015(1)(b)); Or Laws 1997, ch 703, § 1 (amending ORS 419B.020(1)); Or Laws 2007, ch 781, § 1 (same); Or Laws 2009, ch 296, § 1 (amending ORS 419B.023(2)). In addition, the 1975 amendments to *former* ORS 418.760 (1971) had the effect of deleting the requirement that law enforcement agencies notify the DHS predecessor upon receiving a report of abuse, but the 1977 Legislative Assembly added back the law enforcement notification requirement through an amendment to *former* ORS 418.755 (1975), *repealed by* Or Laws 1993, ch 546, § 141. Or Laws 1975, ch 644, § 8; Or Laws 1977, ch 741, § 1.

to enforce those duties. Plaintiff has pointed to nothing in the legislative history—and we have identified nothing in that history—to suggest that the 1971 Legislative Assembly impliedly intended to create a private right of action for violation of the duties that it imposed on responding "law enforcement agenc[ies]." Similarly, plaintiff has pointed to nothing in the legislative history—and we have identified nothing—to suggest that the 2007 legislature impliedly intended to create a private right of action to enforce violations of those duties that it imposed on "person[s] conducting an investigation." Indeed, there is no indication that either group of legislators even considered the possibility of creating—or denying—a private right of action to enforce those duties.

In sum, we agree with plaintiff that the legislature has imposed mandatory duties on law enforcement agencies that have received, and on personnel who are investigating, an existing report of child abuse, but the mandatory duties alone do not establish that the legislature impliedly intended to create a statutory private right of action to address violations of those duties. Nothing in the text or context of the statutes imposing those law enforcement duties suggests that the legislature intended to create a private right of action. And, although plaintiff emphasizes the immunity provision and the penalty provision in the child-abuse-reporting statutes, those provisions do not advance our analysis of legislative intent, because there are too many competing inferences that could be drawn. Finally, the relevant legislative history provides no indication that the legislatures that enacted the duties at issue in this case had any intent to create a private right of action to address violations of those duties. Accordingly, we are not persuaded that the legislature expressly or impliedly intended to create statutory liability to address violations of the notification and investigatory duties that law enforcement agencies and personnel must satisfy in response to an existing report of child abuse.

As noted above, in opposing the Jefferson County defendants' motion to dismiss in the trial court, plaintiff confirmed those defendants' understanding that the complaint was alleging a claim for statutory liability based on

violations of the child-abuse-reporting statutes. 370 Or at 220. Plaintiff maintains in arguments to this court, however, that he does not want to foreclose the possibility of also pursuing a parallel common-law claim for relief, and he asks this court to advise the parties about all of the ways that the statutory duties might be used to establish the elements of an existing common-law claim. *See Bellikka v. Green*, 306 Or 630, 650, 762 P2d 997 (1988) (explaining that claims based on statutory liability "exist independent of any parallel common-law claim and can be pleaded independently, with or without an accompanying common-law claim" and describing various ways that a statute may be used to support a common-law negligence claim). In addition, he has argued in his reply brief that this court should consider recognizing a new common-law right of action to address violations of the duties imposed by the child-abuse-reporting statutes. *See Doyle*, 356 Or at 363 (noting that this court may determine whether to create a common-law right of action in the absence of "legislative intent to create or deny a right of action"). Nothing in this opinion should be read as foreclosing the possibility of a common-law claim under the circumstances that plaintiff has alleged. But what plaintiff now requests goes significantly beyond the scope of the certified question, and we decline to answer more than the question that the district court has certified to us.

The certified questions are answered.